78 Mass. App. Ct. 691 (2011)                                    691

Northern Security Insurance Company, Inc. *v.* R.H. Realty Trust.

NORTHERN SECURITY INSURANCE COMPANY, INC. *vs.* R.H.
REALTY TRUST & another.[1]

No. 09-P-1757.

Middlesex. October 13, 2010. - February 8, 2011.

Present: KANTROWITZ, KAFKER, & WOLOHOJIAN, JJ.

*Insurance,* Defense of proceedings against insured. *Consumer Protection Act,*
Attorney's fees, Unfair act or practice.

In a civil action seeking a judgment declaring an insurer's rights, duties, li-
abilities, and obligations with regard to an insured's defense of an underly-
ing action using retained counsel after rejecting the insurer's representation
with a reservation of rights, the judge correctly concluded that the insurer
violated G. L. c. 93A, § 11, in offering to reimburse the insured at a rate
lower than the rate to which the retained counsel had agreed, but unnecessar-
ily and unreasonably delaying payment of even the lower rate for fourteen
months, in the hope of unfairly securing an advantageous outcome; in not
paying undisputed and reasonable court expenses; in refusing to negotiate
regarding the rate; and in disregarding advice from its own counsel and
claims manager regarding the rate [694-697]; however, the judge abused his
discretion in determining that a rate even higher than that to which retained
counsel had agreed was a reasonable rate [697-698].

CIVIL ACTION commenced in the Superior Court Department
on October 22, 2004.

A motion for partial judgment on the pleadings was heard by
*D. Lloyd Macdonald,* J., and the case was heard by *Thayer
Fremont-Smith,* J.

*Richard R. Eurich* for the plaintiff.

*John P. Ryan* (*Harry A. Pierce* with him) for the defendants.

KANTROWITZ, J. Today we assess an insurer's obligation to pay
reasonable legal fees to a private attorney hired by an insured

[1]Sloane and Walsh, LLP.

who refused the insurer's legal representation conditioned upon a reservation of rights.[2]

*Facts.* In September, 2001, the Niininen family commenced a law suit against Peter Kelly and Richard Perry, individually and as trustees of the R.H. Realty Trust (trust), and Woodhaven Realty Company. The Niininens complained that they had leased residential premises in Lexington from the trust from 1998 to 2000, during which time they were exposed to mold. The family was required to vacate the premises and stay in a hotel, and claimed $14,000 in damages in addition to medical expenses. The complaint was served on the trust on December 7, 2001. Later that month, Vermont Mutual Insurance Group (Vermont Mutual), the parent company of Northern Security Insurance Company, Inc. (Northern Security), sent a reservation of rights letter to the trust noting that the trust was only covered for one of the counts.[3] The letter failed to inform the trust at that time that it could retain its own counsel for which the insurance company would be required to pay reasonable attorney's fees and costs associated with the defense.

In response, the trust rejected representation with the reservation of rights, and subsequently retained attorney William J. Dailey, Jr., of Sloane and Walsh, LLP (Sloane & Walsh). Dailey and the trust agreed that Dailey would be paid $225 per hour. This rate was unusually low for Dailey,[4] but he agreed to it because his friends and neighbors were members of the trust.

Throughout his defense, Dailey provided status reports to Northern Security, keeping it abreast of the developments in the case, and mailed two bills reflecting the rate of $225. The first

---

[2]Representation with a reservation of rights "permit[s] the insurer to assume the defense of the claim against the policyholder without waiving, surrendering, or losing the right to contend that the claim is not subject to indemnity under the policy." Fischer, Insurer or Policyholder Control of the Defense and the Duty to Fund Settlements, 2 Nev. L.J. 1, 29 (2002).

[3]The counts included (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) duty of care, (4) misrepresentation, and (5) violation of G. L. c. 93A.

[4]William J. Dailey, Jr., is a senior partner at Sloane & Walsh, where he has been a trial attorney for the past forty years. He is a fellow for the American College of Trial Lawyers and an AV rated attorney in the Martindale-Hubbell Directory. An AV certification signifies that a lawyer's peers rank him or her at the highest level of professional excellence.

bill was sent in April, 2002, but was not paid until June, 2003. In addition to the inordinate delay in paying the bill, the amount paid was at a rate of $150 per hour.[5]

In October, 2003, Dailey settled the underlying suit for $75,000, apparently an excellent result given the original demand of $650,000. In June, 2004, Sloane & Walsh sent a G. L. c. 93A demand letter to Vermont Mutual seeking the balance between its rate of $225 and Northern Security's rate of $150. In July, 2004, Northern Security responded, denying any c. 93A violation.

At issue, initially, was $12,860, the difference between the bill Sloane & Walsh submitted and what Northern Security paid.

*The legal proceedings.* On October 22, 2004, Northern Security filed an action seeking a judgment declaring its rights, duties, liabilities, and obligations under the policy of insurance. Specifically, Northern Security asked the Superior Court judge to determine what constituted reasonable attorney's fees for the services rendered by Sloane & Walsh in defending the trust. Sloane & Walsh answered and brought a counterclaim against Northern Security alleging breach of contract as a third-party beneficiary, violations of G. L. c. 93A, and unjust enrichment or quantum meruit.

Sloane & Walsh also filed a motion on the pleadings seeking partial judgment that $225, not $150, per hour was the market rate for someone of attorney Dailey's abilities. In January, 2006, the motion judge ruled that "$225 per hour is per se reasonable as an hourly fee for an attorney in the Boston Metropolitan area."[6] In response to the motion judge's ruling, in April, 2006, Sloane & Walsh sent a second c. 93A demand letter to Northern Security's counsel offering to dismiss the case if Northern Security agreed to pay the amount that the judge determined to be the minimum fee due. Northern Security never responded notwithstanding having received advice, even prior to the judge's

---

[5]In addition to not paying Sloane & Walsh, Northern Security did not pay the experts or court reporters. Dailey testified at trial that he was aware of several cases wherein Northern Security intentionally delayed payment to pressure lawyers to accept lower fees.

[6]This decision was made prior to Northern Security filing a responsive memorandum. As such, Northern Security filed a motion for reconsideration. Thereafter, the judge reaffirmed his initial decision.

decision, from its corporate counsel and its branch office claims manager that $225 an hour was a reasonable fee.[7] Sloane & Walsh then filed a supplemental counterclaim, seeking an additional violation of c. 93A against Northern Security for failure to respond to its demand letter.

Trial was later held before a different judge, who ruled that the fair and reasonable hourly rate for services rendered by Dailey was $350 per hour and ordered Northern Security to pay that amount. The judge also found that Northern Security violated c. 93A and awarded Sloane & Walsh its attorney's fees. In finding the c. 93A violation, the judge explained that Northern Security could not reasonably or plausibly have believed that it did not have to pay Sloane & Walsh at a rate of $225 after the previous judge's ruling and after Northern Security's counsel and its claims manager opined that Northern Security would probably have to pay that amount.[8] The judge also noted that Northern Security's failure to respond to Sloane & Walsh's April 18, 2006, settlement offer demonstrated an unfair settlement practice in that it demonstrated Northern Security's failure to negotiate. The judge ruled, however, that Northern Security's violations were not so egregious as to require punitive damages. All remaining claims and counterclaims were dismissed.

Northern Security appeals, claiming error by (1) the motion judge in ruling that $225 per hour was per se reasonable; (2) the trial judge in finding a c. 93A, § 11, violation where Northern Security had a rational basis to pay $150 per hour; and (3) the trial judge in not capping the award at a maximum of $225 per hour. We affirm in part and reverse in part.

*Discussion.* "When an insurer seeks to defend its insured under a reservation of rights, and the insured is unwilling that the

---

[7] Vermont Mutual's general counsel was told by a senior litigation partner who worked for its outside counsel "that the courts will most likely find that [Dailey's] fee of $225 per hour is reasonable and as such, we will be faced with one of two choices: pay the difference or incur additional legal fees in fighting this issue. [The partner] felt that this would be a losing battle and we would end up paying the difference." The claims manager opined, in the words of the trial judge, "that we may want to consider paying Atty. Dailey at the rate of $225 per hour . . . [as] Attorney Dailey is a well known commodity in Boston and most, if not all, judges would agree that his rate of $225 per hour is reasonable."

[8] There is no claim of attorney-client privilege.

insurer do so, the insured may require the insurer either to relinquish its reservation of rights or relinquish its defense of the insured and reimburse the insured for its defense costs." *Herbert A. Sullivan, Inc.* v. *Utica Mut. Ins. Co.*, 439 Mass. 387, 406-407 (2003). In such an instance, the insurer must pay the reasonable charges of the insured's retained counsel. *Magoun* v. *Liberty Mut. Ins. Co.*, 346 Mass. 677, 685 (1964).

The issue thus boils down to the reasonableness of the amount of the fee paid ($150) versus the fee demanded ($225). Northern Security's rationale for the $150 rate was that it reflected what it paid its panel attorneys; indeed, the rate was ten dollars more than Northern Security's highest rate. The problem with this position, in the view of the trial judge, was his belief that the insured was entitled to have a reasonable fee paid, based on market rather than panel rates. Panel rates, the judge correctly observed, often reflect, first, what Northern Security was able to bargain for as a large insurance company handling various cases involving many attorneys, who presumably wish to continue receiving referrals; and second, the justifiable interest of a company such as Northern Security to keep its legal costs down, especially in routine cases, which may be at odds with an insured's desire to pay more for legal representation in the hope of minimizing legal exposure.

Here, the evidence was overwhelming in support of the $225 rate. An expert opined that the figure was not only "extremely reasonable" but also "remarkable" given attorney Dailey's abilities and reputation. Dailey himself testified that his normal fee for reservation of rights cases was $385 per hour.[9] Further, as Northern Security "could have included in the [policy] explicit provisions concerning the cost of defence in various situations . . . , we think that uncertainty should be resolved against the insurer." *Magoun* v. *Liberty Mut. Ins. Co.*, 346 Mass. at 685.[10]

Finding no fault with the above rulings of the trial judge, we now turn to whether he was justified in holding that Northern Security's offer to pay the $150 rate was a violation of c. 93A.

---

[9] In seven reservation of rights cases, Dailey received $385 per hour; in nine other cases, he received $315 per hour.

[10] It is certainly conceivable that a judge, in other circumstances and within the proper exercise of his or her discretion, could determine that the panel rate was in fact reasonable and base an award on that rate.

Northern Security claims that since it had a rational basis upon which to pay its suggested rate, the judge's c. 93A finding was unwarranted. It further asserts that it filed for declaratory judgment to rule on that precise point.

We need not detail at length the well-known principles covering violations of c. 93A, § 11, other than noting that unfairness is determined from an examination of all the pertinent circumstances. *Duclersaint* v. *Federal Natl. Mort. Assn.*, 427 Mass. 809, 814 (1998). Ordinarily, "a good faith dispute as to whether money is owed, or performance of some kind is due, is not the stuff of which a c. 93A claim is made." *Ibid.* Mere nonpayment of a debt normally does not justify finding c. 93A liability. *Community Builders* v. *Indian Motocycle Assocs.*, 44 Mass. App. Ct. 537, 559 (1998). However, other additional conduct may lend support to finding a c. 93A violation. *Id.* at 557-558 ("defendants . . . withheld payment unconscionably, stringing [plaintiff] along in performing more services, but refusing substantial payments, all with a purpose of coercing [plaintiff] to settle for substantially less compensation").

Here, Northern Security unnecessarily and unreasonably delayed payment for fourteen months despite acknowledging that, while it asserted that it did not owe the hourly fee of $225, it owed at least $150.[11] Further, it did not pay the undisputed and reasonable court expenses, e.g., court reporters and experts, thereby placing Sloane & Walsh in a precarious position in defending the case; it refused to negotiate, as demonstrated by its failure to respond to Sloane & Walsh's efforts to resolve the matter[12]; it disregarded advice from its own counsel and claims manager[13]; and, based on Dailey's testimony regarding Northern

---

[11]During oral argument, counsel for Northern Security acknowledged the delay and explained that it was due to a miscommunication.

[12]Although Northern Security had no obligation to respond to the second c. 93A letter as this was a § 11, as opposed to a § 9, claim, its lack of response did reflect an unwillingness to negotiate and respond to the overtures of Sloane & Walsh. While claims under § 11 that concern the rights of those who engage in the conduct of a trade or business do not incorporate violations of G. L. c. 176D, § 3, as does c. 93A, § 9, *Jet Line Servs., Inc.* v. *American Employers Ins. Co.*, 404 Mass. 706, 717 n.11 (1989), a judge may nonetheless rely on a c. 176D violation as evidence of an unfair business practice under § 11. *R.W. Granger & Sons* v. *J & S Insulation, Inc.*, 435 Mass. 66, 78 (2001).

[13]Northern Security was free to reject the legal advice of outside counsel,

Security's past practices, it intentionally delayed payment of its bills in the hope of unfairly securing an advantageous financial outcome.[14] Lastly, Dailey appeared to have achieved an excellent resolution of the underlying case. All in all, while close, in taking all of these factors together, the judge was justified in finding a violation of c. 93A.

*The award of a $350 per hour fee.* Ordinarily, the question what constitutes reasonable attorney's fees is left to the sound discretion of the judge. *Berman* v. *Linnane*, 434 Mass. 301, 302-303 (2001). Judicial discretion in this regard is guided by several factors, including "the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases." *Linthicum* v. *Archambault*, 379 Mass. 381, 388-389 (1979). "No one factor is determinative, and a factor-by-factor analysis . . . is not required." *Berman* v. *Linnane*, *supra* at 303.

The judge found that the $350 per hour fee was reasonable and that Northern Security should be required to pay Sloane & Walsh that fee. If nothing else were in the record, our inquiry would end there. However, detrimentally to Sloane & Walsh, it had agreed upon a fee with its client in the amount of $225 per hour. If no third party were involved and the trust failed to pay the agreed upon fee, suit would be brought seeking that amount. "Compensation is that amount of money that reasonably will make the injured party whole. Compensatory damages may not

---

compare *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 14 (1989); *Hartford Cas. Ins. Co.* v. *New Hampshire Ins. Co.*, 417 Mass. 115, 122 n.5 (1994), but it was still compelled to offer sufficient evidence of the reasonableness of its $150 fee rate. This it failed to do. Indeed, the judge in his findings outlined cases in which he noted comparable hourly fees of $345, $325, $275, $320 to $325, and $350. It appears that little, if any, credible evidence was offered indicating a justification of the $150 rate other than, "That's what we pay our panel attorneys." The judge in this case was free to find such evidence lacking.

[14]As noted, Northern Security here delayed payment of undisputed bills. While the trial judge did not rest his decision on this point, it was nonetheless a factor worthy of consideration. See *Hawthorne's, Inc.* v. *Warrenton Realty, Inc.*, 414 Mass. 200, 210 n.6 (1993).

exceed this amount. Anything beyond that amount is a windfall. . . . General Laws c. 93A, consistent with this principle, states that 'recovery shall be in the amount of actual damages.' See G. L. c. 93A, §§ 9(3) and 11, fifth par." *Kattar* v. *Demoulas*, 433 Mass. 1, 15 (2000). Because Northern Security's obligation was to protect and indemnify the trust against its losses, Northern Security's liability for attorney's fees should not exceed the amount of fees the trust in fact incurred.[15,16]

*Conclusion.* The matter is remanded to ascertain the amount of damages, with interest, based on a rate of $225 per hour, plus attorney's fees. In all other respects, the judgment is affirmed. Finally, Sloane & Walsh having prevailed on the c. 93A count, its request for appellate attorney's fees and costs is allowed. *Fabre* v. *Walton*, 441 Mass. 9, 10-11 (2004). Sloane & Walsh is to file, within fourteen days, its request for fees. Northern Security shall then have seven days to respond.

*So ordered.*

---

[15]Northern Security has asked us to vacate the motion judge's determination that "$225 is per se reasonable." The trial judge did not use this finding in any manner, other than as a circumstance to be considered in determining a c. 93A violation. He also recognized, correctly, that the motion judge's determination was interlocutory in nature and superseded by the final judgment.

[16]To the extent we have not addressed any other points raised, it is not because we have not considered them; rather, "[w]e find nothing in them that requires discussion." See *Department of Rev.* v. *Ryan R.*, 62 Mass. App. Ct. 380, 389 (2004), quoting from *Commonwealth* v. *Domanski*, 332 Mass. 66, 78 (1954).