Norfolk & Dedham Mutual Fire Insurance Company *v.* Cleary Consultants, Inc.

NORFOLK & DEDHAM MUTUAL FIRE INSURANCE COMPANY *vs.*
CLEARY CONSULTANTS, INC., & others.[1]

No. 10-P-1360.

Norfolk. April 4, 2011. - December 16, 2011.

Present: COHEN, KATZMANN, & VUONO, JJ.

*Insurance,* Insurer's obligation to defend, Business owner's policy, Coverage.
*Privacy. Libel and Slander. Employment,* Sexual harassment. *Practice,
Civil,* Summary judgment.

In a civil action brought by an insurer, seeking a judgment declaring that the
insurer had no duty to defend the insureds in a discrimination claim filed
against them at the Massachusetts Commission Against Discrimination, the
judge erred in granting summary judgment in favor of the insurer, where
the claims in the underlying action stated or roughly sketched a claim fall-
ing within the coverage of the business owners insurance policy in ques-
tion for damages arising out of conduct constituting oral publication of
material that violated the affected individual's right of privacy, and where
an exclusion in the policy, removing from coverage "personal and advertis-
ing injury" caused by or at the direction of the insured with knowledge
that the act would violate the rights of another, did not relieve the insurer
of its duty to defend, in that the underlying allegations concerning the
individual insured fell well within the range of reckless (rather than
intentional) conduct, and in that the individual insured's state of mind
could not be attributed to the corporate insured as a matter of law, such
that even if the exclusion were applicable to the individual insured, the
insurer's duty to defend the corporate insured would not be negated.
[47-54]
The judge in a civil action properly declined to grant summary judgment
regarding counterclaims that required further fact finding or raised factual
questions. [54]

CIVIL ACTION commenced in the Superior Court Department on
October 31, 2008.

The case was heard by *Elizabeth B. Donovan,* J., on motions
for summary judgment.

[1]Mary Cleary, Jonah D. Adelman, and Rebecca A. Towers. Neither Adelman
nor Towers is a party to this appeal.

*Paul Holtzman (Jonathan A. Scharf* with him) for Cleary Consultants, Inc., & another.

*Kevin M. Truland (Richard W. Jensen* with him) for the plaintiff.

COHEN, J. Cleary Consultants, Inc., and its president, Mary Cleary (collectively, the Cleary defendants), appeal from a summary judgment entered in Superior Court in favor of their insurer, Norfolk & Dedham Mutual Fire Insurance Company (Norfolk), declaring that Norfolk had no duty to defend the Cleary defendants in a case filed against them by Rebecca A. Towers at the Massachusetts Commission Against Discrimination (MCAD).[2] Like the motion judge, we conclude that Towers alleged claims within the coverage of Norfolk's policy. However, unlike the motion judge, we conclude that an exclusion relied upon by Norfolk did not relieve Norfolk of its duty to defend.

*The policy.* During the period from November 9, 2005, to November 9, 2007, the Cleary defendants were named insureds under a special business owners policy issued to them by Norfolk. At issue here is the *personal and advertising injury* coverage of the policy.

The relevant policy terms are as follows. The insuring agreement for "SECTION II — LIABILITY" provides:

> "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages.
>
> ". . .
>
> "This insurance applies:
>
> ". . .
>
> "(2) To 'personal and advertising injury' caused by an offense arising out of your business, but only if the offense

---

[2] The judgment also declared that Norfolk had no duty to indemnify the Cleary defendants. As a result of later developments, the duty to indemnify is not involved in this appeal.

was committed in the 'coverage territory' during the policy period."

"Personal and advertising injury" is defined as:

> "injury, including consequential 'bodily injury' arising out of one or more of the following offenses:
>
> ". . .
>
> "d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> "e. Oral or written publication, in any manner, of material that violates a person's right of privacy."

"Suit" is defined as:

> "a civil proceeding in which damages because of . . . 'personal and advertising injury' to which this insurance applies are alleged."

Exclusion p provides in relevant part that there will be no coverage for claims of personal and advertising injury:

> "(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'; [or]
>
> "(2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity."

*Towers's original complaint.* On December 31, 2007, Towers, who had been employed as a recruiter by Cleary Consultants, Inc., during the period May 16, 2006, to March 9, 2007, filed a charge of discrimination at the MCAD, naming the Cleary defendants and Towers's immediate supervisor, Jonah D. Adelman, as respondents. In pertinent part, the allegations of the Towers complaint may be summarized as follows:

From the start of and throughout her employment, Adelman

made sexually explicit, inappropriate, and unwelcome comments to Towers, over her protestations. Adelman inquired about her divorce and expressed amazement that her ex-husband would have let "such a beautiful girl" go. Adelman told her about his sex life and asked about hers; and he brushed off her expressed desire not to discuss her personal life with him by saying that if she stayed close to him, he would make sure she was a success and would be able to take care of her children.

During coffee breaks that Adelman insisted Towers take with him outside the office, he asked her whether she kept "going down" on her husband at the end of her marriage, stating that it was something that he could not live without. In July, 2006, having become aware that Towers was in a relationship, Adelman stated, "I can't believe you have a boyfriend. I hope you aren't f***ing this guy. That wouldn't be good for your kids." Thereafter, on numerous occasions, Adelman would refer to the fact that Towers's boyfriend was a nurse and "attempt to embarrass" Towers by stating things like, "How does a male nurse get to have that?" "Why would you be with a fag?" and "You must be crazy after the divorce."

Towers and at least one other employee observed Adelman viewing pornography on his work computer. Starting in August, 2006, Adelman required Towers to check his electronic mail messages (e-mail) when he was absent from the office. Because the company's e-mail program was configured to display the content of the message even before it was opened, checking Adelman's e-mail resulted in Towers being exposed to sexually explicit material, including Adelman's solicitation of a prostitute and a picture of a penis.

Towers complained to Cleary about Adelman's behavior. Towers's first complaint was made after one week or so of employment, during the final week of May, 2006. Towers told Cleary that Adelman made her feel uncomfortable and described the inappropriate comments made by him. Cleary's response was to laugh and to instruct Towers to ignore Adelman's behavior, stating that he made Cleary money, and that was why she kept him. She also stated that Towers was "a very attractive girl and, in this business, [she] should use that to [her] advantage." Later, in June, 2006, Towers asked if she could work from

home in order "to avoid the discomfort caused by [Adelman's] inappropriate conduct." Cleary denied her request, saying in so many words, "Jonah may be rough around the edges, but he's harmless. He will teach you a lot. Just try to ignore the other stuff." When Towers again complained in September, 2006 — this time stating that she was being exposed to pornographic material — Cleary downplayed Adelman's conduct as simply being "immature" and emphasized his skills as a recruiter.

During a four-day period in the beginning of March, 2007, when her daughter was ill, Towers worked at home, communicating with Adelman periodically by telephone. After a conversation in which he told her that she would need to repay at least one commission on placements that had fallen through, Towers complained to Adelman that his inappropriate conduct had caused her significant distress. Adelman then informed her that it was apparent that she could not give one hundred percent to the job because she was a single parent, and told her not to bother coming back. Towers considered herself terminated and did not return to work.

Towers further alleged that Adelman's inappropriate conduct was unwelcome, offensive, severe, and pervasive to the point that it created an abusive work environment, and that it caused her financial loss and "significant emotional distress, including humiliation and loss of self-esteem."

*Claim for coverage and Norfolk's response.* Norfolk was notified of the Towers case in March, 2008. In a letter dated May 30, 2008, Norfolk disclaimed coverage, stating that none of the damages alleged by Towers constituted "bodily injury," "property damage," or "personal and advertising injury," and that even if there were any bodily injury, an exclusion for bodily injury to an employee would apply. On these grounds, Norfolk declined to defend and to indemnify the Cleary defendants.

Counsel for the Cleary defendants immediately requested that Norfolk revisit its position, contending that the Towers complaint included allegations of invasion of privacy, a designated offense included in the personal and advertising injury coverage, which was not subject to the employee exclusion on which Norfolk relied. Counsel also directed Norfolk to a rebuttal filed by Towers at the MCAD, which included a supporting affidavit

from a former coworker of Towers, David Schlemann. The Schlemann affidavit, which counsel forwarded to Norfolk, averred, among other things, that Schlemann had witnessed Adelman harassing Towers "on many occasions." Schlemann cited "[e]xamples of such harassment," including "openly commenting on [Towers's] appearance" and "inquiring to Ms. Towers about her personal life." Schlemann also averred that he witnessed Adelman make inappropriate and offensive comments about Towers, including, "She's f***ing hot . . . I'd like to bang her," or words to that effect. In addition, Schlemann averred that Towers "expressed her embarrassment to [Schlemann] in relation to Mr. Adelman's comments on several occasions."

After receiving the Schlemann affidavit, Norfolk referred the matter to outside coverage counsel. In a letter dated July 16, 2008, Norfolk's coverage counsel indicated to counsel for the Cleary defendants that Norfolk again took the position that the policy did not cover the Towers claims. According to Norfolk, the complaint stated a claim for discrimination and could not reasonably be construed to "adumbrate"[3] a claim for invasion of privacy because it contained no allegation that Adelman had published his offensive comments about Towers to others, as required under the terms of the personal and advertising injury coverage of the policy. Norfolk acknowledged that the Schlemann affidavit averred that Schlemann had been present when Adelman made offensive comments to Towers; however, Norfolk took the position that the comments cited by Schlemann as having been heard by him did not support a claim for invasion of privacy.

Norfolk nevertheless agreed to provide a defense to the Cleary defendants under a reservation of rights, and assigned the defense to a firm of Norfolk's choice. The Cleary defendants responded by insisting upon exercising their right to select independent

---

[3]Norfolk's use of the word "adumbrate" is consistent with the *Sterilite* standard for determining an insurer's duty to defend: "[I]f the allegations of the complaint [against the insured] are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense." *Sterilite Corp.* v. *Continental Cas. Co.*, 17 Mass. App. Ct. 316, 318 (1983). Recently, the Supreme Judicial Court has rephrased the standard by replacing "adumbrate" with the equivalent, but more commonly understood words, "roughly sketch." *Billings* v. *Commerce Ins. Co.*, 458 Mass. 194, 200 n.6 (2010).

counsel at Norfolk's expense.[4] Norfolk acquiesced, but declined to pay counsel's full hourly rate of $385. Instead, after pointing out that the Cleary defendants had another potentially applicable insurance policy issued by a different insurer that also was defending under a reservation of rights, Norfolk stated that it would pay one-half of the legal fees incurred by the Cleary defendants at an hourly rate of $150, without prejudice to either party seeking a judicial determination whether additional payment was required.

On October 31, 2008, Norfolk filed the instant declaratory judgment action, naming the Cleary defendants, Adelman, and Towers as defendants.[5] After receiving the complaint, the Cleary defendants sent Norfolk a demand letter asserting that Norfolk had failed to satisfy its contractual and statutory obligations and, in answering the complaint, asserted counterclaims for breach of contract and violations of G. L. c. 93A and G. L. c. 176D.

*Towers's amended complaint.* On March 13, 2009, Towers filed an amended complaint at the MCAD. The amended complaint was identical to the original complaint except that it contained a few additional allegations: Adelman "speculated about [her] sex life, which was witnessed and overheard by [her] co-workers"; "Adelman's inappropriate conduct deeply embarrassed [her]"; Adelman "invaded [her] right to privacy and slandered [her] reputation by circulating his humiliating, vulgar, false, and demeaning statements among co-workers"; and Adelman's conduct caused and continues to cause her "significant emotional distress, including humiliation, embarrassment, loss of privacy, damage to [her] reputation, and loss of self-esteem."

*Summary judgment decision.* On cross motions for summary judgment, the judge allowed Norfolk's motion and denied that of the Cleary defendants. The judge concluded that the facts alleged by Towers were sufficient to put Norfolk on notice that she was claiming damages for invasion of privacy and defama-

---

[4]See *Magoun* v. *Liberty Mut. Ins. Co.*, 346 Mass. 677, 685 (1964); *Northern Security Ins. Co.* v. *R.H. Realty Trust*, 78 Mass. App. Ct. 691, 694-695 (2011).

[5]In its complaint, Norfolk relied for the first time upon exclusion p as an alternative ground for denying coverage.

tion as described in the personal and advertising injury cover-
age of the policy. However, the judge also concluded that the
actions of the Cleary defendants fell within two sections of
exclusion p because Towers's claims were for injury "caused
by or at the direction of the insured with the knowledge that the
act would violate the rights of another and would inflict 'personal
and advertising injury,' " and injury "arising out of oral or writ-
ten publication of material, if done by or at the direction of the
insured with knowledge of its falsity." The judge reasoned that
these exclusionary provisions came into play because Cleary
had been informed about Adelman's conduct and comments,
and a reasonable person in her position would have known that
Adelman was violating Towers's rights.

*Discussion.* a. *Duty to defend.* We review the judge's sum-
mary judgment rulings de novo, applying the well-established
standard for determining an insurer's duty to defend. See note
3, *supra.* See also *Billings* v. *Commerce Ins. Co.,* 458 Mass.
194, 200-201 (2010), and cases cited. Placed in terms of the li-
ability coverage insuring agreement and the definition of
"personal and advertising injury," the question of Norfolk's
duty to defend requires us to consider whether the Towers com-
plaint states or roughly sketches a claim for "damages because
of" an "injury . . . arising out of" either "oral or written
publication, in any manner, of material that slanders" Towers,
or "oral or written publication, in any manner, of material that
violates [her] right of privacy." If so, we then must consider
whether exclusion p applies to negate coverage. Before focus-
ing our attention on these inquiries, however, we make a few
preliminary comments addressed to the general thrust of
Norfolk's position that the Towers action is simply a discrimina-
tion claim, and not within the intended scope of the policy in
question.

First, it makes no difference to the analysis of Norfolk's duty
to defend that Towers's allegations were made in a discrimina-
tion charge brought at the MCAD. Under the terms of the policy,
Norfolk had the "right and duty to defend the insured against
any 'suit' seeking . . . damages [because of, e.g.,] personal and
advertising injury." The term "suit" is broadly defined as "a
civil proceeding in which damages because [of, e.g.,] 'personal

and advertising injury' to which this insurance applies are alleged." In other words, the policy does not limit its coverage to cases filed in court, and Norfolk does not so argue.

Second, it makes no difference to the analysis that discrimination in the form of sexual harassment is the essential legal theory underpinning the Towers complaint. The legal theory of the case is not determinative of the duty to defend. See *id.* at 201. What matters is whether the allegations made by Towers are reasonably susceptible of the interpretation that they state or roughly sketch a claim for damages because of injury *arising out of* one or more of the offenses specified as within the personal and advertising injury coverage, i.e., "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services"; or "[o]ral or written publication, in any manner, of material that violates a person's right of privacy." It is of no significance that other factors may have contributed to those damages apart from conduct covered by the policy. The phrase "arising out of" must be read expansively and has a broad meaning analogous to "but for" causation. See *American Home Assur. Co.* v. *First Specialty Ins. Corp.*, 73 Mass. App. Ct. 1, 5 (2008), citing *Bagley* v. *Monticello Ins. Co.*, 430 Mass. 454, 457 (1999).

Third, it makes no difference to the analysis that the MCAD does not have jurisdiction to adjudicate either a common-law claim of slander or a common-law or statutory claim of invasion of privacy. Reasonably understood, neither the original nor the amended complaint seeks such an adjudication; rather, each seeks damages for injuries caused by behavior in the nature of slander and invasion of privacy that were part of a campaign of sexual harassment. Furthermore, the alleged injuries — humiliation, embarrassment, loss of privacy, damage to reputation, and loss of self-esteem — are not alien to MCAD proceedings. They are the types of injuries that are compensable in that forum through the medium of an award for emotional distress. See, e.g., *Massachusetts Commn. Against Discrimination* v. *Franzaroli*, 357 Mass. 112, 115-116 (1970); *College-Town, Div. of Interco, Inc.* v. *Massachusetts Commn. Against Discrimination*, 400 Mass. 156, 162 & 169 (1987); *Stonehill College* v.

*Massachusetts Commn. Against Discrimination*, 441 Mass. 549, 573-574 (2004). In any event, even if the Towers complaint could be viewed as a misguided effort to adjudicate claims of slander and invasion of privacy in an improper forum, that would not affect Norfolk's duty to defend. An insurer's obligation to defend is not limited to valid claims; it extends even to claims potentially dismissible for lack of subject matter jurisdiction. See generally Windt, Insurance Claims & Disputes § 4:1 (5th ed. 2010).

Finally, we note that unlike other commercial liability insurance policies, this policy made no attempt to exclude personal and advertising injury associated with discrimination against or harassment of an employee. See, e.g., *New England Mut. Life Ins. Co.* v. *Liberty Mut. Ins. Co.*, 40 Mass. App. Ct. 722, 723 (1996) (applying exclusion for personal injury arising out of unlawful discrimination). See also *Parish of Christ Church* v. *Church Ins. Co.*, 166 F.3d 419, 421 (1st Cir. 1999) (applying exclusion for personal injury sustained as result of offense directly or indirectly related to employment of injured person by named insured); *Peterborough Oil Co.* v. *Great Am. Ins. Co.*, 397 F. Supp. 2d 230, 239-240 (D. Mass. 2005) (discussing exclusion for employment-related acts and omissions, but not applying it to claim by former employee for malicious prosecution); *Erie Ins. Property & Cas. Co.* v. *Edmond*, 785 F. Supp. 2d 561, 572-573 (N.D. W.Va. 2011) (discussing exclusion for employment-related practices, policies, acts, or omissions including discrimination and harassment).

We turn now to the nub of the matter, beginning with whether the conduct alleged to have injured Towers constitutes "[o]ral or written publication, in any manner, of material that slander[ed]" Towers, or "[o]ral or written publication, in any manner, of material that violate[d] [her] right of privacy." Obviously, the amended complaint explicitly alleges that Adelman "invaded [Towers's] right to privacy and slandered [her] reputation by circulating his humiliating, vulgar, false, and demeaning statements among co-workers." However, especially because these allegations were added only after the declaratory judgment complaint was filed, Norfolk urges us to disregard the references to invasion of privacy and slander as simply an

50          81 Mass. App. Ct. 40 (2011)

Norfolk & Dedham Mutual Fire Insurance Company v. Cleary Consultants, Inc.

attempt to "re-brand" Towers's claim to invoke coverage where it otherwise would not exist.

We do not disagree that the underlying factual allegations of a complaint are a better gauge for assessing potential coverage than conclusory theoretical labels squarely at odds with those facts. See *Bagley* v. *Monticello Ins. Co.*, 430 Mass. at 458, citing *First Wyo. Bank* v. *Continental Ins. Co.*, 860 P.2d 1094, 1099 (Wyo. 1993). See also *Terrio* v. *McDonough*, 16 Mass. App. Ct. 163, 168-169 (1983). Here, however, the labels are not at odds with Towers's factual allegations. Indeed, even Towers's original complaint, especially when considered in light of the averments contained in the Schlemann affidavit,[6] alleged facts consistent with and sufficient to state or roughly sketch a claim for damages arising out of conduct constituting "[o]ral . . . publication, in any manner, of material that violate[d] [Towers's] right of privacy."[7]

In a previous case concerning the scope of liability insurance providing coverage for the violation of an individual's right to privacy, we looked to the Massachusetts invasion of privacy statute, G. L. c. 214, § 1B, for guidance. See *Transamerica Ins. Co.* v. *KMS Patriots, L.P.*, 52 Mass. App. Ct. 189, 195-196 (2001). We observed that in order to establish invasion of privacy under the statute, a person must allege an unreasonable, substantial, and serious interference with his or her privacy, *id.* at 196. In *Transamerica, id.* at 195, the allegations pertaining to invasion of privacy were that during the tort plaintiff's initial employment interview, her potential supervisor asked her whether she was married, whether she had a boyfriend, how long she had dated, and whether her boyfriend was going to marry her. There also were allegations that, during her employment, her supervisor "frequently took an interest in the status of her relationship with [her] boyfriend, including asking her if her boyfriend was going to marry her." *Ibid.* Because the complaint

---

[6]"The duty to defend is determined based on the facts alleged in the complaint, and on facts known or readily knowable by the insurer that may aid in its interpretation of the allegations in the complaint." *Billings* v. *Commerce Ins. Co.*, 458 Mass. at 200.

[7]In view of this conclusion, we need not consider whether Towers's factual allegations also suffice to fall within the personal and advertising injury coverage for slander.

did not allege that the comments were an unreasonable, substantial, or serious interference with the tort plaintiff's privacy, and because there was nothing in the comments that reasonably could be susceptible of such an interpretation, we held that the insurer's duty to defend was not triggered. *Id.* at 196.

Here, however, the comments alleged in the Towers complaint are palpably different, as they are of an overtly sexual nature. From the inception of the case, Towers alleged that Adelman repeatedly made offensive sexual comments about her appearance and her relationships. He questioned her about her sex life during her marriage and after her divorce, and ridiculed her choice of boyfriend by using an offensive, derogatory term to question the boyfriend's sexuality and Towers's attraction to him. These allegations should have been understood by Norfolk as raising a claim for invasion of privacy. See *Melnychenko* v. *84 Lumber Co.*, 424 Mass. 285, 290-291 (1997) (offensive sexual comments publicly made by supervisor about employee and his girlfriend supported finding of violation of employee's right of privacy under G. L. c. 214, § 1B).

We reject any suggestion that, for the most part, Adelman's comments were not published to others, as required for coverage to attach, and that any remaining comments were too benign to form a basis for a claim of invasion of privacy. The amended complaint specifically alleges that Adelman's speculations about Towers's sex life were witnessed and overheard by her coworkers, and that he circulated humiliating, vulgar, false, and demeaning statements among her coworkers. Indeed, even prior to amendment, Towers's allegations created the distinct possibility that her claims involved *public* humiliation, and any conceivable doubt on that score soon was dispelled by the Schlemann affidavit. Schlemann averred that he had witnessed Adelman harassing Towers "on many occasions," and then gave "[e]xamples," which, by definition, should have been understood by Norfolk to be illustrative and not exclusive. Schlemann also stated that he had witnessed Adelman make inappropriate and offensive comments about Towers, including, "She's f***ing hot . . . I'd like to bang her," or words to that effect. By the time of the Schlemann affidavit, if not earlier, Norfolk was on notice that the Towers claims concerned crude, sexually-charged comments published to others.

Having determined that the Towers complaint alleges damages because of injury arising out of invasion of the right of privacy as specified in the personal and advertising injury coverage, we next consider the validity of Norfolk's contention that exclusion p eliminates coverage for Cleary and, by imputation, for Cleary Consultants, Inc. We view this question in light of well-settled principles. It is the insurer who bears the burden of proving the applicability of an exclusion. See, e.g., *Hanover Ins. Co.* v. *Talhouni*, 413 Mass. 781, 785 (1992). In order for an exclusion to negate an insurer's duty to defend ab initio, the facts alleged in the third-party complaint must establish that the exclusion applies to all potential liability as matter of law. See *Sterilite Corp.* v. *Continental Cas. Co.*, 17 Mass. App. Ct. 316, 321-323 (1983) (insurer had duty to defend where factual allegations were "ample enough to harbor" ground for liability falling outside exclusion). If the claimant's factual allegations are susceptible of an interpretation that leaves room for coverage, or are insufficiently developed, the insurer must defend unless and until it "demonstrates with conclusive effect on the third party [i.e., the claimant] that as matter of fact — as distinguished from the appearances of the complaint and policy — the third party cannot establish a claim within the insurance." *Id.* at 323.

Turning to exclusion p, we focus upon subpart (1), which removes from coverage "personal and advertising injury" (in this case, injury arising out of publication of material that violated Towers's right of privacy) that is "[c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.' " Because of its reference to *"the* insured," the exclusion must be applied individually to each insured for whom coverage is sought, looking at both the causation and knowledge components of the exclusion in relation to that insured.[8] See Windt, Insurance Claims & Disputes § 11:8 & n.5 (5th ed. 2010).

---

[8]Because we have not reached the question of coverage for slander, we do not comment upon subpart (2) of the exclusion, which eliminates coverage for personal and advertising injury "[a]rising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity." In any event, subpart (2) cannot apply here because there are no

Towers alleges that she notified Cleary on three different occasions of offensive behavior by Adelman: towards the end of May, 2006, after Towers had been employed for one week or so and already had been subjected to inappropriate comments; in June, 2006, when she asked if she could work from home in order to avoid the "discomfort" caused by Adelman's conduct; and in September, 2006, when she told Cleary that she (Towers) was being exposed to pornographic material. Towers also alleges, in substance, that Cleary consistently made light of her complaints and spoke of Adelman's value to the company and skill as a recruiter. Towers does not allege that Cleary, personally, made or published any of the statements that invaded Towers's right of privacy; nor does she allege that Cleary directed them to be made. Thus, to the extent that the complaint may be read as alleging that Cleary "caused" Towers's injuries, it is on the basis of Cleary's failure to protect Towers from Adelman's behavior.

We will assume, without deciding, that a failure of this nature can supply the causal connection required by the exclusion.[9] Even so, however, the exclusion does not relieve Norfolk of its duty to defend. As other courts have concluded, this exclusion must be understood as applying only to the intentional and knowing infliction of injury, and not to injury resulting from reckless or negligent behavior. See, e.g., *Creative Hospitality Ventures, Inc.* v. *United States Liab. Ins. Co.*, 655 F. Supp. 2d 1316, 1337-1338 (S.D. Fla. 2009); *Valley Forge Ins. Co.* v. *Swiderski Electronics, Inc.*, 359 Ill. App. 3d 872, 888 (2005); *Kubit* v. *MAG Mut. Ins. Co.*, 708 S.E.2d 138, 149-150 (N.C. App. 2011). Here, Towers's allegations concerning Cleary fall well within the range of reckless misconduct. See *Worcester Ins. Co.* v. *Fells Acres Day Sch., Inc.*, 408 Mass. 393, 411 (1990) (knowledge of abusive activities of others, coupled with failure to protect, constitutes reckless, not intentional conduct).

allegations that any publication of comments concerning Towers was "done by or at the direction" of Cleary.

[9]There are no Massachusetts cases construing this exclusion, and we are unaware of any case decided elsewhere where the exclusion has been applied to an insured who was not a participant in the offense but who is alleged to have brought about the claimant's injury by failing to prevent or stop the actions of someone else.

Because Towers's allegations leave it possible for Cleary to be found liable based on something less than intentional and knowing infliction of injury upon Towers, the exclusion does not negate Norfolk's duty to defend Cleary.

Finally, even if we were to accept Norfolk's position that, on the facts alleged by Towers, Cleary should be charged with knowing to a substantial certainty that her failure to police Adelman was resulting in the violation of Towers's rights and the invasion of her privacy, Norfolk still would have a duty to defend Cleary Consultants, Inc. "We disregard the corporate fiction and impute to the corporation the intentions of its principals only in 'rare particular situations in order to prevent gross inequity.' " *Id.* at 407-408 (citation omitted). In the insurance context, "[t]he inquiry is factually based, and may have to be conducted as to each injury." *Id.* at 409. Considerations include whether the wrongful acts of the corporate principal were performed on behalf of the corporation such that the corporation may be viewed as financially implicated in the activity, or whether the wrongful acts were so routine as to constitute a general practice or policy of the corporation. *Id.* at 408-409.

The allegations of the Towers complaint are insufficient to establish as matter of law that Cleary's state of mind should be attributed to Cleary Consultants, Inc. See *ibid.* (state of mind of officers and shareholders who intentionally committed inherently injurious acts would not be imputed to corporation absent fully developed record). Accordingly, even if the exclusion were applicable to Cleary, it would not negate Norfolk's duty to defend Cleary Consultants, Inc.

b. *Cleary defendants' counterclaims.* The Cleary defendants claim that they are entitled to summary judgment on their counterclaims. We disagree. Their counterclaim for breach of contract for failure to pay reasonable defense costs requires further fact finding, see *Northern Security Ins. Co.* v. *R.H. Realty Trust,* 78 Mass. App. Ct. 691, 694-695 (2011), and their counterclaims under G. L. c. 93A and G. L. c. 176D raise factual questions, such as whether Norfolk acted in good faith in advancing its coverage positions, which cannot be decided as matter of law on the summary judgment record before us.

*Conclusion.* Norfolk's motion for summary judgment should not have been allowed. The judgment is vacated, and the case is remanded for entry of a new judgment declaring that Norfolk had a duty to defend the Cleary defendants in the Towers case, and for further proceedings with respect to the Cleary defendants' counterclaims.[10]

*So ordered.*

---

[10]The Cleary defendants are entitled to an award of reasonable appellate attorney's fees to the extent those fees related to the duty to defend issue. See *Rubenstein* v. *Royal Ins. Co. of America*, 429 Mass. 355, 358 (1999); *Hanover Ins. Co.* v. *Golden*, 51 Mass. App. Ct. 465, 468 (2001), *S.C.*, 436 Mass. 584 (2002). In accordance with the procedure set forth in *Fabre* v. *Walton*, 441 Mass. 9, 10-11 (2004), the Cleary defendants may file an application for such fees and costs, together with supporting materials, within fourteen days of the date of the rescript. Norfolk will have fourteen days thereafter to respond.