NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1176

EL GROUP, LLC, & others[1]

vs.

UTICA NATIONAL INSURANCE GROUP & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendants insured the plaintiffs -- EL Group, LLC (EL Group), and its managers and members, Joseph P. Lotuff, III, Frederick A. Lotuff,[3] and E. Alden Edmonds -- against "personal and advertising injury." When the defendants declined to defend or indemnify the plaintiffs against allegations that the plaintiffs had "impugn[ed] the professional reputation" of a

_____

[1] Joseph P. Lotuff, Third; Frederick A. Lotuff; and E. Alden Edmonds.

[2] Utica Mutual Insurance Company and Graphic Arts Mutual Insurance Company.

[3] We refer to Joseph P. Lotuff, III, and Frederick A. Lotuff, individually, by their first names. We refer to them, together, as the Lotuffs.

former business partner, the plaintiffs brought this action to determine the defendants' obligations. On cross motions for summary judgment, a Superior Court judge concluded that the former business partner had not alleged personal and advertising injury. A judgment entered for the defendants, and the plaintiffs appealed. In prior proceedings a different panel of this court concluded that the former business partner did allege personal and advertising injury but remanded for consideration of whether any exclusions relieved the defendants of the duty to defend or indemnify. See EL Group, LLC v. Utica Nat'l Ins. Group, 100 Mass. App. Ct. 1119 (2022). On remand, a judgment again entered for the defendants. The plaintiffs appealed, and we now affirm.

Background. The underlying dispute was between the plaintiffs in this action and a former business partner, Frank Clegg. After the partnership broke down, two of the plaintiffs, EL Group and Joseph, brought a lawsuit against Clegg, Clegg's company, and Clegg's sons. Clegg and his company responded with a multicount counterclaim against all the plaintiffs -- EL Group, the Lotuffs, and Edmonds. Thereafter, Clegg and his company amended their counterclaim to remove Edmonds as a counter defendant.

The amended counterclaim alleged the following facts. Clegg had designed, marketed, and sold designer leather handbags

2

for more than thirty-five years and was well known and respected in the industry.  In or around 2009, the Lotuffs reached out to Clegg about a business plan to sell Clegg's products on the internet.  The Lotuffs proposed that Clegg continue designing and manufacturing his goods and that the Lotuffs would design and build a website where those goods could be sold.  The Lotuffs represented that they wanted to partner with Clegg because they did not have the ability to design leather goods themselves.  Clegg accepted the Lotuffs' offer with the understanding that his goods would be sold under his name. While Clegg did not know it at the time, the Lotuffs were working on behalf of and conspiring with EL Group to steal Clegg's designs.

As Clegg was putting the finishing touches on the collection of products that were to be sold through the website, the Lotuffs began to take credit for Clegg's designs.  First, the Lotuffs informed Clegg that the products would be sold under the name "Lotuff & Clegg."[4]  Later, at a trade show, Clegg overheard Joseph falsely tell someone "that a 'design team' was

---

[4] Clegg acquiesced to selling his goods under that name "in the spirit of comity."  However, he did not consent to the name being trademarked.  Nonetheless, Clegg later learned that the defendants did register the name.  The defendants also registered the domain name frankclegg.com without Clegg's consent.

3

responsible for the collection, rather than crediting . . . Clegg for his work on the designs." The Lotuffs also undertook efforts to reverse engineer Clegg's products. When Clegg confronted the Lotuffs, Frederick said, "I guess we're both going to be making the same bags and selling them to the same customers." Joseph informed Clegg that EL Group would "make it look like . . . Clegg never existed." While Clegg immediately terminated his partnership with the plaintiffs, the plaintiffs produced knockoffs of Clegg's goods and falsely marketed the designs as their own. In addition, Joseph falsely told people that Clegg was responsible for a backlog of Lotuff & Clegg orders.

As noted, EL Group and Joseph brought the underlying action; Clegg and his company originally counterclaimed against all the plaintiffs; and the plaintiffs sought a defense and indemnification from the defendant insurance companies in this action. The defendants took the position that the amended counterclaim did not allege personal and advertising injury and that, regardless, several exclusions relieved the defendants of the duty to defend or indemnify. As pertinent to this appeal, the defendants relied on the following exclusions: the knowing violation of the rights of another; material published with knowledge of its falsity; material published prior to the policy period; the infringement of copyright, patent, trademark or

4

trade secret; and the unauthorized use of another's name or product.  After the defendants refused to defend or indemnify the plaintiffs, the plaintiffs brought this action to determine the defendants' obligations.

Discussion.  We review a grant of summary judgment de novo to determine "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law" (quotation omitted).  Dorchester Mut. Ins. Co. v. Miville, 491 Mass. 489, 492 (2023).

We focus on the duty to defend, as the duty to defend is broader than the duty to indemnify.  See Boston Symphony Orch., Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 10 (1989).  See also Marculetiu v. Safety Ins. Co., 98 Mass. App. Ct. 553, 560 (2020).  "The duty to defend is determined based on the facts alleged in the [underlying] complaint, and on facts known or readily knowable by the insurer that may aid in its interpretation of the allegations in the complaint" (quotation omitted).  Marculetiu, supra.  "An insurer has a duty to defend an insured when the allegations in [the underlying] complaint are reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms" (quotation omitted).  Masonic Temple Ass'n of Quincy, Inc. v. Patel, 489 Mass. 549, 560 (2022).  "[W]hen the allegations in the

5

underlying complaint lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate or defend the claimant" (quotation omitted). Id. If an insurer relies on an exclusion to disclaim coverage, "[i]t is the insurer who bears the burden of proving the applicability of an exclusion." Norfolk & Dedham Mut. Fire Ins. Co. v. Cleary Consultants, Inc., 81 Mass. App. Ct. 40, 52 (2011). "In order for an exclusion to negate an insurer's duty to defend ab initio, the facts alleged in the [underlying] complaint must establish that the exclusion applies to all potential liability as matter of law." Id.

As discussed in the prior appeal, the allegations that the plaintiffs took credit for Clegg's designs and that Clegg was responsible for a backlog of orders amounted to allegations of personal and advertising injury because the plaintiffs' statements "tended to lower Clegg's reputation as a craftsman in the community interested in his products."[5] EL Group, LLC, 100

_____

[5] The decision in the prior appeal did not address whether any infringement of Clegg's intellectual property or any unauthorized use of his name, see note 4, supra, constituted personal and advertising injury. We need not reach that question, either. The policy removed from coverage personal or advertising injury (1) "arising out of the infringement of . . . intellectual property rights" and (2) "arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers." The plaintiffs assert that the amended counterclaim did not "trigger" these exclusions but do not explain why the exclusions would not apply to all

6

Mass. App. Ct. at 1119, slip op. at 6.  The question we must decide in this appeal is whether an exclusion "applie[d] to all potential liability as matter of law."  <u>Norfolk & Dedham Mut. Fire Ins. Co</u>., 81 Mass. App. Ct. at 52.  We need only address the exclusion for the knowing violation of the rights of another, which we conclude relieved the defendants of the duty to defend.

The exclusion for the knowing violation of the rights of another removed from coverage any personal and advertising injury "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'"  While "this exclusion must be understood as applying only to the intentional and knowing infliction of injury, and not to injury resulting from reckless or negligent behavior," <u>Norfolk & Dedham Mut. Fire Ins. Co</u>., 81 Mass. App. Ct. at 53, Clegg and his company's counterclaims allege the intentional and knowing infliction of injury.  In substance, Clegg and his company alleged that the plaintiffs sought to damage his reputation as part of a plan to (1) steal his designs and (2) drive business away from him and toward themselves.  To the extent the plaintiffs succeeded in

_____

potential liability arising out of the infringement of Clegg's intellectual property or the unauthorized use of his name.

damaging Clegg's reputation, the injury was the intended and knowing effect of the plaintiffs' actions. See, e.g., Grange Ins. Ass'n v. Roberts, 179 Wash. App. 739, 767-770 (2013) (same exclusion applied where allegations showed that insured "made false statements for a specific tortious purpose"). Clegg and his company did not allege in the alternative that the plaintiffs acted recklessly or negligently. Given the nature of the allegations in the amended complaint, the defendants did not have a duty to defend the plaintiffs.

We are unpersuaded by the plaintiffs' arguments to the contrary. The plaintiffs argue that they denied any intentional misconduct, but "[a]n insured's denial of the underlying allegations has no bearing on whether a duty to defend exists, because coverage turns on the nature of those allegations, not on whether they are true." Marculetiu, 98 Mass. App. Ct. at 560. The plaintiffs alternatively argue that, at most, the allegations of an intentional injury named only Joseph and that the defendants still had a duty to defend the other plaintiffs. We are unpersuaded because, as we have explained, Clegg and his

company alleged that the plaintiffs all conspired together to commit intentional wrongdoing.

<u>Judgment affirmed</u>.

By the Court (Henry,
   Hershfang & Smyth, JJ.[6]),

*Paul Little*

Clerk

Entered:  August 7, 2024.

---

[6] The panelists are listed in order of seniority.