# United States Court of Appeals
## For the First Circuit

No. 21-1698

LIONBRIDGE TECHNOLOGIES, LLC, f/d/b/a Lionbridge Technologies, Inc.

Plaintiff, Appellant,

v.

VALLEY FORGE INSURANCE COMPANY,

Defendant, Appellee,

H.I.G. MIDDLE MARKET LLC; ENDURANCE ASSURANCE CORPORATION; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,

Third Party Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Kayatta, Selya, and Thompson,
Circuit Judges.

Nicholas D. Stellakis, with whom Walter J. Andrews, Kevin V. Small, and Hunton Andrews Kurth LLP were on brief, for appellant.

Kirk Pasich, Christopher Pasich, and Pasich LLP on brief for United Policyholders, amicus curiae.

William L. Boesch, with whom Regina E. Roman, Kenneth N.

Thayer, and Sugarman, Rogers, Barshak & Cohen P.C. were on brief, for appellee.

---

November 21, 2022

---

**THOMPSON**, **Circuit Judge**.  This case pits an insured, Lionbridge, against its general liability insurer, Valley Forge, to answer whether Valley Forge had to foot Lionbridge's million-dollar legal bills when the company fended off a trade-secrets lawsuit in Manhattan brought by a competitor.  Valley Forge initially paid for some of Lionbridge's defense under a reservation of rights (in insurance-speak, tentative coverage), but only a fraction of what Lionbridge had racked up.  So, Lionbridge sued Valley Forge in the District of Massachusetts seeking full coverage, and fighting back, Valley Forge counterclaimed seeking a declaratory judgment of absolution from policy coverage.[1]  As the case progressed below, each side moved to compel discovery responses from the other, including what they both objected was attorney/client information (usually considered off-limits in a lawsuit).  Relevant here, a magistrate judge denied Valley Forge's request for information exchanged between Lionbridge and its lawyers, which Valley Forge objected up to the district court.  Both parties eventually cross-moved for partial summary judgment on a few of the key legal issues related to coverage.

The district court went on to grant the portion of Valley Forge's motion to compel that sought privileged information but,

---

[1] Though not relevant to the issues on appeal, Valley Forge also cross claimed against other interested persons to this dispute.

at the parties' request, stayed all discovery until it ruled on the cross-motions for summary judgment. So then, ruling in summary judgment favor for Valley Forge, the district court bought the argument that Valley Forge should be let off the policy coverage hook entirely (save for what it had already paid out) concluding it did not owe Lionbridge a duty to defend (i.e., to pay for its defense). The district court also dismissed all of Lionbridge's claims.

Now, to us. On the coverage issue, we disagree, and therefore reverse the district court's summary judgment ruling and direct the entry of summary judgment in favor of Lionbridge on the duty to defend. On the discovery dispute, we affirm the district court's ruling and direct the court to tailor a discovery order that addresses the parties' objections.

## BACKGROUND

*The Underlying Lawsuit*

The coverage dispute now before us arose from a lawsuit ("Underlying Lawsuit") brought against Lionbridge, a company involved in the language-translation industry, in April 2019 in the Southern District of New York by its main competitor in that industry, TransPerfect Global ("TPG"). There, TPG alleged that Lionbridge's corporate owner, private equity firm H.I.G. Middle Market, LLC ("HIG"), concocted a scheme to gain access to TPG's trade secrets, like its sales models, pricing information and

- 4 -

customer lists, so that Lionbridge could poach TPG's customers and otherwise undermine TPG's business advantage by copying its sales practices. TPG claimed that HIG pilfered the proprietary information by faking interest in acquiring TPG throughout multiple rounds of a court-ordered auction that it described as rife with conflicts and inflated bids, which HIG then prolonged (under the guise of engaging in due diligence) just to keep stealing TPG's business information provided to bidders as part of the auction process. In the end, HIG did not purchase TPG, but the winning buyer (one of TPG's co-founders, Philip Shawe) asserted that he paid more because of HIG's auction antics.

TPG also alleged that Lionbridge "took advantage of the extended sales process to undercut TPG" in a few other ways -- contentions that make-or-break this whole coverage dispute.[2] First, TPG claimed that "Lionbridge sales people falsely told TPG's customers that Lionbridge was purchasing TPG and that they should contract with Lionbridge directly before the sale." And second, that Lionbridge "contacted TPG's existing and prospective clients, and both misrepresented the nature of the underlying litigation

---

[2] We will refer to these allegations as the "Misrepresentation Allegations" throughout, and to the complaint in the Underlying Lawsuit as the "TPG Complaint."

and introduced doubt regarding the stability of TPG in bad faith for the purpose of damaging TPG and advantaging Lionbridge."[3]

TPG's amended complaint in the Underlying Lawsuit lodged ten counts against HIG and Lionbridge: Misappropriation of Trade Secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, et seq., and state law (Counts I, II, III and VI); a violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(g) (Counts IV and V); Unfair Competition and Trade Secrets under state law (Count VII); Unjust Enrichment against Lionbridge (Count VIII); Breach of Contract against HIG (Count IX); and Fraud (Count X). TPG sought injunctive relief and damages from HIG and Lionbridge, estimated at over 400 million dollars.[4]

---

[3] We infer from this allegation that Lionbridge told TPG's customers that TPG's business was unstable because of the rancorous litigation between TPG's co-founders, Philip Shawe and Elizabeth Elting. The former romantic pair brought their acrimonious personal and business relationship to the fore of day-to-day operations at TPG, and after several lawsuits shot back-and-forth, Elting eventually petitioned a Delaware court to declare a shareholder deadlock (both co-founders held a 50% stake in TPG) and appoint a custodian to sell TPG, which it did, resulting in the court-ordered auction. See Shawe v. Elting, 157 A.3d 152, 156-59 (Del. 2017).

[4] The merits of the Underlying Lawsuit have since resolved in favor of Lionbridge, although that does not impact our analysis of this coverage dispute. First, in March 2020, shortly after Lionbridge filed this action, the New York district court dismissed the CFAA counts. See TransPerfect Glob., Inc. v. Lionbridge Techs., Inc., No. 19-cv-3283, 2020 WL 1322872 (S.D.N.Y. Mar. 20, 2020). Then, in January 2022, while the parties were briefing this appeal, the court granted Lionbridge's motion for summary judgment on the remaining counts. See TransPerfect Glob., Inc. v. Lionbridge Techs., Inc., No. 19-cv-3283, 2022 WL 195836 (S.D.N.Y. Jan. 21, 2022).

*Relevant Details of the Policy*

Before recounting the coverage dispute, we lay out the relevant provisions of Lionbridge's commercial general liability policy ("Policy") from Valley Forge. The Policy covers damages that the insured is "obligated to pay" because of "personal and advertising injury." That means Valley Forge "[had] the right and duty to defend the insured against any suit seeking those damages." The Policy defines personal and advertising injury by listing multiple offenses, so "injury . . . arising out of" something on that list triggers coverage. Within that, we focus on the sole provision in dispute: the Policy covers injury arising out of "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services[.]"

But even if an injury fits into that framework, it might fall into one of the Policy's exclusions, in which case the insured could be cut loose from coverage -- more on exclusions later.

*How We Got Here*

Before we tackle the legal claims at issue, we will describe how the coverage spat played out below. In June 2019, Lionbridge notified Valley Forge of the Underlying Lawsuit. Valley Forge responded in a July letter with an initial coverage determination, writing that it had "reviewed the Complaint and . . . the Policies" and concluded that, "[b]ecause certain

allegations in the Complaint could potentially seek damages for a personal and advertising injury as defined by [the Policy], [Valley Forge] will agree to defend [Lionbridge],[5] pursuant to a reservation of rights." Valley Forge quoted the Misrepresentation Allegations[6] and wrote that, "[b]ased on these allegations, [Valley Forge] will agree to defend . . . Lionbridge in connection with the TPG Suit . . . only because the above referenced allegations could potentially seek damages for 'libel, slander or disparagement,' a personal and advertising injury offense, published by or on behalf of Lionbridge . . . ."[7]

Valley Forge indicated that its "coverage position [was] an initial one, based upon the Complaint's allegations and now available information," and that it would defend under a reservation of rights -- in other words, Valley Forge agreed to pay for Lionbridge's defense, but reserved the right "to modify [its] position in response to additional information and future

---

[5] We presume the letter intended to say Lionbridge, as Lionbridge is the insured here.

[6] Recall the Misrepresentation Allegations stated, in sum, that Lionbridge used the auction process to falsely claim that it was purchasing TPG, and that the TPG co-founders' litigation rendered the company unstable, all so that Lionbridge could poach TPG's customers.

[7] When TPG filed an amended complaint in the Underlying Lawsuit, Valley Forge reaffirmed the position in a September 2019 letter that it was agreeing to defend Lionbridge because the Misrepresentation Allegations could seek damages for libel, slander, or disparagement.

developments, should [Valley Forge] subsequently determine modification is appropriate." Valley Forge also reserved the right "to file a declaratory judgment action to determine [its] coverage obligations to Lionbridge under the polic[y]," including the applicability of the "Knowing Exclusions" and the "Trade Secrets Exclusions" (details of the relevant exclusions forthcoming). By defending under a reservation of rights, the letter explained, Lionbridge could take its pick of the law firm litter, but counsel could only be reimbursed for "necessary and reasonable defense costs," including "the hourly rate of commensurate counsel in the jurisdiction where the [Underlying Lawsuit] is pending," here the Southern District of New York.

The parties' coverage clash began from there. Lionbridge retained Kirkland & Ellis, but Valley Forge refused to pay the law firm's set rates -- $1,410-1,055 per hour for partners and $925-$795 per hour for associates -- asserting those rates "substantially exceed the market rates that have been deemed reasonable by courts in the SDNY area." Instead, Valley Forge determined its own "reasonable rates for Kirkland," settling on $600 per hour for partners, $400 per hour for associates and $200 per hour for paralegals. Lionbridge also retained another law firm, Akerman, supposedly to keep costs down by using the firm's lower hourly rate to handle discovery. But Valley Forge refused to pay for any of Akerman's work, asserting that it had no

- 9 -

obligation to pay a second law firm. Finally, Valley Forge determined that it would reimburse Lionbridge for 50% of the "common defense" costs between Lionbridge and HIG, since it insured Lionbridge, not HIG, and none of the defense costs HIG solely incurred, since HIG had coverage from another insurer, Endurance Assurance Corporation ("Endurance").

Lionbridge brought this lawsuit in January 2020 seeking full coverage from Valley Forge for its defense costs, including Akerman's fees and Kirkland's set rates, and those fees that jointly benefitted HIG. Valley Forge counterclaimed for a declaration that its reimbursements to date were reasonable (i.e., that it was not obligated to pay more than its reduced rates for Kirkland, nothing for Akerman, and 50% of the joint defense costs).[8] Valley Forge also filed a third-party complaint against HIG and two of its insurers to recoup any costs it had paid to HIG.[9]

---

[8] As of August 2020, Kirkland had billed Lionbridge about $2.1 million in fees and expenses, and Akerman had billed about $550,000. Totaling all invoices (including a third law firm and vendors), Lionbridge requested reimbursement of over $3.1 million in legal fees and expenses. Of that, Valley Forge paid about $620,000.

[9] Valley Forge's third-party complaint alleges that HIG did not pursue defense coverage from Endurance, even though HIG incurred defense costs that would be covered by the policy it held with Endurance. So, the complaint charges, Endurance paid nothing, and Valley Forge paid more for HIG's defense costs than it should have.

While discovery was ongoing and the parties continued their back-and-forth over what legal bills Valley Forge should cover, Lionbridge moved for partial summary judgment on its declaratory judgment count, seeking a ruling that Valley Forge owed Lionbridge a duty to defend. Valley Forge then cross-moved for summary judgment, arguing that it owed no such duty.[10]

Meanwhile, the parties forged ahead with discovery, and continued to butt heads, filing motions to compel certain discovery responses from each other. Among other requests, Lionbridge wanted Valley Forge to turn over what rates it had paid its own lawyers to defend other lawsuits in the Southern District of New York. And Valley Forge wanted to see certain communications, reports, and documents between Lionbridge and Kirkland related to Lionbridge's defense in the Underlying Lawsuit, including discussions about the firm's retention and Kirkland's reports about the defense. The parties appeared before a magistrate judge in November 2020, who ruled at the hearing that the rate request information Lionbridge was seeking was relevant and must be

---

[10] Even after Lionbridge filed its summary judgment motion, Valley Forge indicated a willingness to stipulate that it had a duty to defend Lionbridge in the Underlying Lawsuit. At oral argument, however, counsel for Valley Forge explained that the insurer first revisited its position on the duty to defend upon Lionbridge's motion because it was "prompted to look at the issue," rather than quibbling over "subsidiary issues" like reasonable rates, which had previously consumed its litigation resources. Valley Forge described its about-face, conceding it was a change of opinion, as "a change of focus, a change of strategy."

disclosed, but that Valley Forge's request sought attorney-client privileged documents and communications, which need not be turned over. Valley Forge objected to these rulings to the district court, who affirmed on the rate information but overruled the magistrate's privilege call, and thus granted Valley Forge's motion to compel information exchanged between Lionbridge and Kirkland. As to the latter discovery requests, neither decision ruled on their relevance, just privilege.

Later, in August 2021, the district court ruled on the cross-motions for summary judgment, deciding based on the language of the Policy and exclusions that Valley Forge did not owe a duty to defend Lionbridge in the Underlying Lawsuit. From there, the court denied Lionbridge's request for additional coverage from Valley Forge since "there was no duty to defend to begin with," and dismissed all of Lionbridge's remaining claims. Summary judgment also issued for Valley Forge. Lionbridge timely appealed and now we enter the mix.[11]

---

[11] A note about our appellate jurisdiction. After briefing and argument, we questioned whether the district court's dismissal order, which followed the cross-motions for summary judgment, also intended to extinguish Valley Forge's counter and third-party claims, which Valley Forge had brought against HIG's corporate parent and two of its insurers. If those claims remained pending, we would lack jurisdiction over this appeal. See United States ex rel. Willette v. Univ. of Mass., Worcester, 812 F.3d 35, 44-45 (1st Cir. 2016) (emphasizing that "[a] final decision is one that disposes of all claims against all parties" (quotation marks and citation omitted)). We granted the parties leave to seek clarification from the district court pursuant to Fed. R. Civ. P.

- 12 -

**DISCUSSION**

*Valley Forge's Defense*

We review the district court's decision on the cross-motions for summary judgment de novo. <u>Zurich Am. Ins. Co.</u> v. <u>Elec. Me., LLC</u>, 927 F.3d 33, 35 (1st Cir. 2019). Our task in this appeal requires us only to interpret the relevant provisions of the Policy, and with no genuine dispute of material facts, we must affirm the judgment below if the district court's conclusions were correct as a matter of law. <u>Id.</u>

*Policy Coverage for the Underlying Complaint*

Like the district court we start with the threshold issue presented below and on appeal -- did the allegations in the underlying complaint trigger coverage under the Policy? Please bear with us as we begin by laying out the legal landscape that guides our analysis.

In Massachusetts,[12] "[a]n insurer has a duty to defend an insured when the allegations in [the underlying] complaint are

---

60(a) and remanded the case to the district court to rule on that motion. In response, the district court clarified that it intended to dismiss all claims in the lawsuit, including Valley Forge's counter and third-party claims. Satisfied with the district court's clarification, we have jurisdiction to proceed to the merits of this appeal. <u>Accord</u> <u>Bos. Car Co.</u> v. <u>Acura Auto. Div., Am. Honda Motor Co.</u>, 971 F.2d 811, 814-15 (1st Cir. 1992).

[12] The parties agree that Massachusetts law governs our analysis of the Policy, and "we accept their reasonable agreement." <u>Suzuki</u> v. <u>Abiomed, Inc.</u>, 943 F.3d 555, 561 (1st Cir. 2019).

- 13 -

reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms," Billings v. Commerce Ins. Co., 936 N.E.2d 408, 414 (Mass. 2010), and as we'll explain below, no exclusions preclude coverage, see Norfolk & Dedham Mut. Fire Ins. Co. v. Cleary Consultants, Inc., 958 N.E.2d 853, 862 (Mass. App. Ct. 2011). The facts alleged need not "specifically and unequivocally make out a claim within the coverage" but rather "need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage." Billings, 936 N.E.2d at 414 (quoting Sterilite Corp. v. Cont'l Cas. Co., 458 N.E.2d 338, 341 (Mass. App. Ct. 1983)). Our analysis "does not turn on the specific cause of action" stated in the underlying complaint, but rather "focuses on 'envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy.'" Holyoke Mut. Ins. Co. in Salem v. Vibram USA, Inc., 106 N.E.3d 572, 577 (Mass. 2018) (quoting Billings, 936 N.E.2d at 415). In other words, we determine whether the underlying complaint invokes coverage based on the "source" of the injury "rather than the specific theories of liability" advanced in the complaint. Bagley v. Monticello Ins. Co., 720 N.E.2d 813, 817 (Mass. 1999) (quoting New Eng. Mut.

Life Ins. Co. v. Liberty Mut. Ins. Co., 667 N.E.2d 295, 299 (Mass. App. Ct. 1996)).

To answer this threshold coverage question, we "compar[e] the allegations in the [underlying complaint] against the provisions of the insurance policy." Deutsche Bank Nat'l Ass'n v. First Am. Title Ins. Co., 991 N.E.2d 638, 641 (Mass. 2013). And we resolve "[a]ny uncertainty as to whether the pleadings include or are reasonably susceptible to an interpretation that they include a claim covered by the policy terms . . . in favor of the insured . . . ." Id. at 642.

With this legal guidance in our rear-view mirror, we tackle the parties' coverage arguments. Lionbridge contends that the Misrepresentation Allegations in the TPG complaint roughly sketch a claim for defamation because they show a "possibility" of falling within the Policy and "envisage" these covered claims, pointing to allegations of reputational harm and to the damages TPG sought from all of Lionbridge's alleged conduct. The district court rejected Lionbridge's position below -- rightly so says Valley Forge -- by homing in on several pleading infirmities (we'll drill down on them shortly) as to certain elements of each covered offense. We disagree and conclude that the complaint in the

- 15 -

Underlying Lawsuit, specifically the Misrepresentation Allegations, triggers coverage under the Policy. Here's how.

As we laid out above, the Policy kicks in if the complaint alleges "injury . . . arising out of . . . [o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." Espying the complaint, we see it alleges that "Lionbridge sales people falsely told TPG's customers that Lionbridge was purchasing TPG and that they should contract with Lionbridge directly before the [auction] sale," and also "contacted TPG's existing and prospective clients, and both misrepresented the nature of the underlying litigation and introduced doubt regarding the stability of TPG in bad faith . . . ." As to harm, part of TPG's fraud claim alleged, in reference to Lionbridge's supposed falsehoods, that "these statements caused actual confusion among TPG's clients, some of whom have decreased or reduced their business with TPG."

Taking these allegations, resolving as we must any uncertainty in favor of Lionbridge, see Deutsche Bank Nat'l Ass'n, 991 N.E.2d at 642, the question before us is whether they roughly sketch an "injury . . . arising out of" a defamation claim -- be it libel (written) or slander (spoken) -- because they could reasonably be read to describe reputational harm to TPG flowing from Lionbridge spreading falsehoods about the future and

- 16 -

stability of the company, see Ravnikar v. Bogojavlensky, 782 N.E.2d 508, 510 (Mass. 2003).[13] Moreover, tort law specifically recognizes reputational harm to a business as actionable defamation. Pan Am Sys., Inc. v. Atl. Ne. Rails & Ports, Inc., 804 F.3d 59, 64 (1st Cir. 2015) (quoting Restatement (Second) of Torts § 561(a) (explaining that "'[o]ne who publishes a defamatory matter' concerning a for-profit corporation can be liable 'if . . . the matter tends to prejudice [the corporation] in the conduct of its business or to deter others from dealing with it'")(alteration in original)); Sandals Resorts Int'l Ltd. v. Google, Inc., 925 N.Y.S.2d 407, 412 (N.Y. App. Div. 2011) (noting that in New York, corporate defamation requires harm to business

---

[13] Disparagement, to the contrary, requires falsehoods about a company's products or services to cause them pecuniary loss. See HipSaver, Inc. v. Kiel, 984 N.E.2d 755, 762 (Mass. 2013). We agree with the district court that the TPG complaint does not allege any falsehoods about any of Lionbridge's products or services, instead casting doubt on the stability and future ownership of the business. Even if the TPG complaint alleged pecuniary loss, that loss did not flow from disparagement, but rather a different source of injury: defamation. See Ruder & Finn Inc. v. Seaboard Sur. Co., 52 N.Y.2d 663, 670-71 (1981) (New York law) ("Where a statement impugns the basic integrity or creditworthiness of a business, an action for defamation lies and injury is conclusively presumed. Where, however, the statement is confined to denigrating the quality of the business' goods or services, it could support an action for disparagement, but will do so only if malice and special damages are proven."). And Lionbridge does not challenge on appeal the district court's determination that the statements did not constitute "use of another's advertising idea," so we confine our analysis to defamation.

reputation); N. Shore Pharmacy Servs., Inc. v. Breslin Assocs. Consulting LLC, 491 F. Supp. 2d 111, 127 (D. Mass. 2007) (same in Massachusetts).

Our conclusion -- that Lionbridge's complaint fairly sketches a defamation claim -- finds support from the Massachusetts Supreme Judicial Court ("SJC"), whose lead we must follow, which similarly found a duty to defend for injury arising from "defamation, libel, or slander," even when those offenses were not pleaded by name. See Billings, 936 N.E.2d at 415. There, just like here, an underlying complaint alleged that the insured spread falsehoods, "pleaded in support of" an intentional tort claim (swap fraud for intentional infliction of emotional distress), but nevertheless "roughly sketched a defamation claim," because the same falsehoods allegedly resulted in reputational damage to the insured. Id. Valley Forge's attempt to distinguish Billings by pointing to "critically different" policy language does not persuade us. True, the Billings policy kicked in for personal injury caused by "Libel, slander or defamation of character," id. at 412 n.3, while the Policy here covers Lionbridge for "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." But we rely on Billings not to hold that the offenses covered by the policies are identical (although there is indeed much relevant overlap).

- 18 -

Rather, we rely on Billings for the principle that the causes of action in the complaint need not map expressly onto those covered by the Policy if the "expectation of protective insurance reasonably generated by the terms of the policy" fits the "kinds of losses [that] may be proved as lying within the range of allegations of the complaint." Id. at 415 (quoting Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 545 N.E.2d 1156, 1159 (1989)). Here, the Policy's coverage for claims arising out of an oral or written publication that slanders or libels an organization creates a reasonable expectation that the Policy would protect Lionbridge from a suit claiming that Lionbridge's statements caused reputational injury to TPG. See Bagley, 720 N.E.2d at 817. We also do not see Billings as distinct from this case, as Valley Forge urges, given that in Billings the SJC determined that the complaint roughly sketched a claim for defamation per se, which does not require proof of economic loss. See Billings, 936 N.E.2d at 415 (citation omitted). The SJC read the allegations of falsehoods leading to reputational harm to sketch a defamation claim, and "[i]n addition," a claim of defamation per se because the alleged falsehoods involved criminal accusations. See id. Regardless, the TPG complaint alleged reputational harm and lost business.

Performing our own de novo comparison of the TPG complaint to the Policy and resolving any close calls in favor of

Lionbridge, we conclude that the TPG complaint roughly sketched a covered claim pursuant to the terms of the Policy. That said, our analysis does not end here.

*Do Any Policy Exclusions Preclude Coverage?*

Regardless of our coverage conclusion, Valley Forge could still extinguish its obligation to defend by demonstrating that a Policy exclusion precludes coverage. See Scottsdale Ins. Co. v. Byrne, 913 F.3d 221, 228-29 (1st Cir. 2019). To do so, Valley Forge, which has the burden of demonstrating that an exclusion applies, must show "the facts alleged in the third-party complaint . . . establish that the exclusion applies to all potential liability as a matter of law." Id. (quoting Norfolk & Dedham Mut. Fire Ins. Co., 958 N.E.2d at 862 (citation omitted)). Like the initial coverage determination, whether an exclusion applies "depend[s] on whether the insured would have reasonably understood the exclusion to bar coverage." Essex Ins. Co. v. BloomSouth Flooring Corp., 562 F.3d 399, 404 (1st Cir. 2009). We conclude that Valley Forge has not met its burden here as to either category of exclusions at issue in this appeal.

As relevant here, four exclusions come into play which we group in two pairs. First, what we call the "Knowing Exclusions": the Policy does not apply to personal and advertising injury (a) "caused by or at the direction of the Insured with the knowledge that the act would violate the rights of another and

- 20 -

would inflict personal and advertising injury," or (b) "arising out of oral or written publication, in any matter, of material, if done by or at the direction of the Insured with knowledge of its falsity." Second, what we call the "Trade Secrets Exclusions": the Policy does not apply to personal and advertising injury (a) "arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights," or (b) "arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, . . . or any other type of nonpublic information."

The Knowing Exclusions preclude coverage for injury done "with the knowledge that the act would violate the rights of another and would inflict personal and advertising injury" or "with knowledge of its falsity." Valley Forge advances two primary arguments, but we are left unpersuaded by them.

First, Valley Forge points out that the Misrepresentation Allegations "specifically allege[] that the statements were made 'in bad faith for the purpose of damaging TPG and advantaging Lionbridge,' . . . 'to undercut TPG,'" and that, generally, the complaint alleges an intentional scheme to damage TPG. Valley Forge does not expand on how its quoted excerpt of the Misrepresentation Allegations maps onto the Knowing

Exclusions, but we assume that it, like the district court, equates bad faith as alleged with intentional conduct which would be excluded. Even so, we find a critical omission from its quoted text. Read in the context of the whole allegation -- that Lionbridge "both misrepresented the nature of the underlying litigation and introduced doubt regarding the stability of TPG in bad faith for the purpose of damaging TPG . . ." -- we think Lionbridge could have reasonably understood the allegation of bad faith and purposeful damage to apply only to the latter "introduced-doubt" conduct. In other words, Valley Forge has not shown that the complaint conclusively alleges intentional conduct as to Lionbridge's employees "misrepresent[ing] the nature of the underlying litigation." By contrast, TPG alleged in the fraud count that "Lionbridge employees deliberately misrepresented to TPG's clients that Lionbridge would be acquiring TPG, and that future business inquiries should be directed to Lionbridge." Such allegation clearly alleges knowledge, leaving no room for a reasonable interpretation otherwise, and suggests that TPG chose not to allege intentional conduct as to the allegation concerning Lionbridge's misrepresentations about the underlying litigation. And we see no force to Valley Forge's thematic characterization of the complaint's allegations resting under the umbrella of intentional conduct; Valley Forge's burden requires it to disprove all potential liability, as a matter of law, that could arise from

each allegation. See Norfolk & Dedham Mut. Fire Ins. Co., 958 N.E.2d at 862.

Second, Valley Forge asserts that the Knowing Exclusions apply because the TPG complaint does not claim or allege negligence. That argument goes nowhere given Valley Forge's burden -- again, it must disprove all *potential* liability as a matter of law. See id. Nonetheless, Valley Forge presses on this point that determining the potential for coverage does not involve "such speculative reinventions of the claims in a complaint." In support of this proposition, Valley Forge relies upon Doe v. Liberty Mutual Insurance Co., 667 N.E.2d 1149, 1152 (Mass. 1996), suggesting that the SJC has rejected an attempt to "isolate instances of possibly negligent conduct from [the] context of [a] complaint['s allegations] as a whole." Doe's holding was not so broad -- the case assessed whether, for the purposes of an intentional injury exclusion, sexual misconduct with a minor "could be found to be merely negligent," and thus outside the exclusion. See id. Rejecting the plaintiff's attempt to isolate one instance of alleged misconduct from the rest ("The complaint alleges an incident of furtively holding a minor's hand after a weekend of blatant sexual touching"), the SJC held that intent to injure could be inferred *as a matter of law* in these cases because "intentionally fondl[ing] [a] minor and intentionally [holding] her hand" could not be artificially separated and were inherently

injurious.  See id. (concluding it was "not possible for intentional sexual misconduct also to be negligent").  And Doe suggests that we should not stretch its reasoning much further: it distinguished between cases where, like we just recited, a negligence theory was legally unsupportable from the allegations in the complaint, and cases that involve intentional acts that could lead to unintentional harm -- classic negligence.  See id. Doe now by the wayside, Valley Forge is back where it started -- with the burden to prove that, as a matter of law, a defamation claim premised on negligent or reckless conduct is legally impossible.  But Valley Forge has made no such argument nor cited to any case establishing the same and has therefore not met its burden.  See Norfolk & Dedham Mut. Fire Ins. Co., 958 N.E.2d at 862.

Finally, while we have found scant Massachusetts authority considering the scenario where the possibility of liability for negligent conduct (here, defamation) allows an insured to avoid a knowing exclusion, we find support from other courts that have endorsed this approach.  See Pharmacists Mut. Ins. Co. v. Myer, 993 A.2d 413, 418 (Vt. 2010) (explaining that "courts have generally construed policy exclusions for 'intentional' misconduct to bar coverage of defamatory statements made with malice or an intent to deceive, while leaving intact coverage of defamatory statements made negligently"); KM Strategic

Mgmt., LLC v. Am. Cas. Co. of Reading PA, 156 F. Supp. 3d 1154, 1170 (C.D. Cal. 2015) (explaining that potential liability "cannot be 'conclusively negated' by pointing to disputed allegations in the very complaint that plaintiffs are seeking to defend against," as such, "courts usually find a duty to defend despite the knowing falsehoods exclusion . . . since despite the allegations of intentional acts, the insured's conduct may be shown to have been merely reckless or negligent" (citations omitted)); Safeguard Scis., Inc. v. Liberty Mut. Ins. Co., No. 91-1480, 1992 WL 12915247, at *3 (3d Cir. Mar. 19, 1992) (noting that "Pennsylvania courts have held that insurers whose policies obligate them to defend only against unintentional torts still must defend against defamation claims when the complaint is unclear as to whether the defamation was intentional or unintentional"); Marleau v. Truck Ins. Exch., 963 P.2d 715, 718 (Or. Ct. App. 1998), aff'd, 37 P.3d 148 (Or. 2001) (holding that where complaint alleged intentional defamation, knowledge exclusion did not apply because statements could have been made "intentionally, but without knowledge of their truth or falsity").

Moving along to Valley Forge's arguments on the Trade Secrets Exclusions, we quickly dispose of them. The Trade Secrets Exclusions bar coverage for injury "arising out of the infringement of . . . trade secret or other intellectual property rights," or "arising out of any access to or disclosure of any person's or

organization's confidential or personal information, including . . . trade secrets, processing methods, customer lists, financial information, . . . or any other type of nonpublic information." Valley Forge contends that the exclusion applies because the "entire subject of the TPG lawsuit" and all its claims arose out of Lionbridge's alleged misappropriation of trade secrets. But we concluded above that the TPG complaint roughly sketched a defamation claim because it alleged injury arising out of false statements that harmed TPG's reputation. Such an injury does not fall into the Trade Secrets Exclusion because it does not conclusively arise out of the alleged theft or misuse of trade secrets. See Bagley, 720 N.E.2d at 816 (explaining that "arising out of" exclusion is "analogous to 'but for' causation," such that a court should ask "whether there would have been . . . injuries, and a basis for the plaintiff's suit, in the absence of the [excluded] conduct"). Here, Valley Forge has not shown how potential liability for the Misrepresentation Allegations depends entirely upon TPG's trade secrets. Valley Forge also asserts that, in "analogous circumstances" to those alleged here, courts hold as a matter of law that there is no duty to defend in a lawsuit "involving" alleged misappropriation of trade secrets. But the policy language in the case Valley Forge relies upon was notably different -- it contained a second clause, absent from the Policy here, that excluded "any personal injury alleged in a suit that

also alleges such infringement."  PTC, Inc. v. Charter Oak Fire Ins. Co., 123 F. Supp. 3d 206, 213, 215 (D. Mass. 2015) (emphasis added) (concluding that "second part of the IP exclusion . . . reaches any suit that includes any allegations of IP infringement or violations in the suit," and applies so long as the allegation is "present in the claim or suit involving the insured").

Finding no applicable exclusion here, and in light of our earlier conclusion that the TPG complaint triggers the Policy, we conclude Valley Forge had a duty to defend Lionbridge in the Underlying Lawsuit.

*Reasonableness of the Defense*

Having concluded that Valley Forge had a duty to defend, we next address the reasonableness of its defense.[14]  Here, and below, the parties extensively briefed whether Valley Forge provided a reasonable defense to Lionbridge between the time it first agreed to defend under a reservation of rights and the district court's summary judgment ruling.[15]  But given the district court's conclusion that Valley Forge had no duty to defend, it did not address these arguments, dismissing the entire suit instead.

---

[14] Valley Forge indicated that it would not seek recoupment of defense costs to date should Valley Forge prevail in its declaratory judgment action against Lionbridge.  Because we have ruled in Lionbridge's favor, we soldier on.

[15] We acknowledge the helpful amicus brief of United Policyholders.

Aside from legal determinations, analysis of these arguments requires factual considerations (e.g., rates paid in similar cases, the allocation of defense costs between Lionbridge and HIG, the tasks that Akerman performed) not fully developed in the record before us. Since we reverse on the duty to defend and find in favor of Lionbridge on that legal issue, we remand to the district court for consideration of the reasonableness of Valley Forge's defense, as well as the remainder of Lionbridge's claims.

### *Motion to Compel*[16]

In addition to appealing the district court's ruling on Valley Forge's defense obligations, Lionbridge challenges the district court's prior discovery ruling that would require it to turn over at least some documents and communications exchanged between it and Kirkland.[17] The crux of that ruling determined that

---

[16] Before taking on the substance of Lionbridge's challenge, we pause to address our appellate jurisdiction over it. Valley Forge contends that we lack jurisdiction to consider the issue because Lionbridge "failed to designate" the discovery order in its notice of appeal. To cut to the chase, we see no issue with Lionbridge's notice, which appeals "from the Order of Dismissal entered in this action . . . and from all prior orders of the court." The Federal Rules of Appellate Procedure do not require greater specificity. See Fed. R. App. P. 3(c)(4) ("The notice of appeal encompasses all orders that, for purposes of appeal, merge into the designated judgment or appealable order. It is not necessary to designate those orders in the notice of appeal."); Gonpo v. Sonam's Stonewalls & Art, LLC, 41 F.4th 1, 9-12 (1st Cir. 2022); accord Vicor Corp. v. Vigilant Ins. Co., 674 F.3d 1, 16 (1st Cir. 2012).

[17] Although Lionbridge sought attorney-client documents from Valley Forge, it declined to object to the magistrate judge's ruling denying the same. We also note that the district court,

- 28 -

the common-interest exception to the attorney-client privilege doctrine applied to the relationship between Lionbridge, Valley Forge, and Kirkland. Where, as here, "the parties contest the formulation of . . . the common-interest doctrine," and its applicability to attorney-client privilege, our review of the legal question is de novo. Cavallaro v. United States, 284 F.3d 236, 245 (1st Cir. 2002).

Before we begin, providing some legal context on the common-interest doctrine would be helpful. The doctrine operates as an exception to the general rule that attorney-client communications are generally not discoverable by adverse parties in litigation. See Vicor Corp. v. Vigilant Ins. Co., 674 F.3d 1, 17-18 (1st Cir. 2012). It "is typically understood to apply '[w]hen two or more clients consult or retain an attorney on particular matters of common interest.'" Cavallaro, 284 F.3d at 249-50 (alteration in original) (quoting Weinstein's Fed. Evid. § 503.15[3] (J.M. McLaughlin, ed., 2d ed. 2002)). In the insurance context, we have explained that Massachusetts law considers "an attorney retained by an insurer to represent the

---

after issuing its motion-to-compel ruling in favor of Valley Forge, quickly stayed further discovery at the parties' request, pending resolution of the cross-motions for summary judgment. Of note, too, the district court did not rule on any of Lionbridge's relevance objections nor tailor its ruling to certain categories of documents that Valley Forge sought. More on that in a bit after we walk through our legal analysis.

insured as the attorney for both." Vicor Corp., 674 F.3d at 19 (citing Imperiali v. Pica, 156 N.E.2d 44, 47 (Mass. 1959)). We have also noted that an insurer providing a defense pursuant to a reservation of rights, like Valley Forge did here, does not defeat a common-interest claim. Id.

With that explainer out of the way, we move to Lionbridge's primary contention regarding the common-interest claim that it was never truly "aligned" with Valley Forge from the start of the TPG litigation and therefore that doctrine should be deemed inapplicable here. This argument simply cannot prevail given our conclusion that Valley Forge had a duty to defend Lionbridge, even if subsequent litigation arose between them. See id. at 18-19. In other words, the possibility of Lionbridge's exposure to an adverse judgment or settlement has satisfied us that the policyholder and insurer are necessarily aligned, and we see no reason to depart here from our reasoning in Vicor. Id.; see also RFF Fam. P'ship, LP v. Burns & Levinson, LLP, No. CIV.A. 12-2234-BLS1, 2013 WL 7855976, at *4 (Mass. Super. Oct. 15, 2013) (citing Vicor and explaining that common interest flows from the potential risk of loss in underlying litigation, not from a dispute over coverage such that "tripartite attorney-client relationship is ordinarily still intact under Massachusetts law, notwithstanding that there is an issue (coverage), outside the

scope of the representation, on which the clients' interests diverge").

As in Vicor, we stress that our conclusion applying the common-interest doctrine to the relationship between Valley Forge and Lionbridge does not "necessarily entitle[] [Valley Forge] to the entire defense file."  Vicor Corp., 674 F.3d at 20.  For example, Lionbridge raised relevance objections below, which neither the magistrate judge nor the district court addressed.  On remand, the district court shall consider these objections and tailor a discovery order, to the extent the parties cannot agree on document production.  See id.

## CONCLUSION

For all the reasons just discussed, we **reverse** the district court's grant of summary judgment in favor of Valley Forge and, on the duty to defend, direct entry of summary judgment in favor of Lionbridge.  On the reasonableness of the defense, we **remand** for further proceedings consistent with this decision.  We further **affirm** the district court's grant of Valley Forge's motion to compel and direct the district court to tailor a discovery order subject to any viable objections Lionbridge may interpose.  Each side shall bear its own costs.