NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-275                                          Appeals Court

JOHN MORIARTY & ASSOCIATES, INC.  vs.  ZURICH AMERICAN
INSURANCE CO.

No. 22-P-275.

Middlesex.      December 1, 2022. – March 31, 2023.

Present:  Milkey, Ditkoff, & Englander, JJ.


Insurance, Insurer's obligation to defend, Unfair act or
     practice.  Contract, Insurance, Indemnity, Subcontractor.
     Damages, Attorney's fees.  Consumer Protection Act,
     Insurance, Businessman's claim.  Indemnity.  Practice,
     Civil, Dismissal, Judgment on the pleadings.



     Civil action commenced in the Superior Court Department on
February 24, 2021.

     Motions to dismiss and for judgment on the pleadings were
heard by Kristen Buxton, J.


     Michael L. Mahoney for the plaintiff.
     Lincoln A. Rose (Scarlett M. Rajbanshi also present) for
the defendant.


     DITKOFF, J.  The plaintiff, John Moriarty & Associates,

Inc. (JMA), a general contractor, was an additional insured on a

commercial general liability insurance policy issued by the

defendant, Zurich American Insurance Co. (Zurich), to one of JMA's subcontractors.  After an employee of that subcontractor brought a negligence action against JMA related to a job site injury, Zurich agreed to defend and indemnify JMA subject to a reservation of rights that expressly included, among other things, a right to recoup defense costs.  Over eight months after JMA made its first demand for a defense and indemnity, JMA initiated the present action alleging that Zurich failed to pay or reimburse any of JMA's defense costs in the ongoing negligence action and that Zurich otherwise committed a breach of its duty to defend and indemnify by refusing to withdraw its reservation of rights.  JMA now appeals from a judgment dismissing its complaint pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974).

Concluding that an insured may recover its costs to prosecute an action against an insurer who admits that it has a duty to defend the insured but refuses to do so, we vacate so much of the judgment as dismissed the breach of contract claim. Similarly concluding that an insurer's refusal to defend while admitting that it has the duty to do so makes out G. L. cc. 93A and 176D claims, we vacate so much of the judgment as dismissed the unfair business practices claims.  We further conclude that JMA has demonstrated that an actual controversy exists with respect to the issue whether Zurich may reserve the right to

recoup defense costs as a matter of law, such that we vacate so much of the judgment as dismissed the request for declaratory relief on that issue.  We otherwise affirm the judgment.

1.  Background.  We summarize the pertinent facts as set forth in the complaint, the exhibits attached thereto, and the document (which is not contested) incorporated by reference that was provided to the motion judge.[1]  See Boston Med. Ctr. Corp. v. Secretary of the Executive Office of Health & Human Servs., 463 Mass. 447, 450 (2012).

a.  The subcontract and insurance policy.  JMA served as the general contractor on a project to construct a new residence hall on the Emmanuel College campus in the city of Boston (project).  JMA subcontracted with PJ Spillane Company, Inc. (PJ Spillane), to perform waterproofing work on the project.  The subcontract included a provision that, "[t]o the fullest extent permitted by law," PJ Spillane would indemnify and hold harmless JMA

> "from and against all claims, damages, losses and expenses, including but not limited to attorneys fees, caused by, arising out of, in connection with, or resulting from the performance of [PJ Spillane's] Work under this Subcontract, where any such claim, damage, loss, or expense is attributable to bodily injury, . . . and is caused by or arises in whole or in part, from any negligent or non-negligent act or omission of [PJ Spillane or its employees] . . . ."

---

[1] Specifically, we consider the Zurich policy referenced in JMA's complaint and attached to Zurich's motion to dismiss.

The subcontract acknowledged that the indemnity provision must be construed in compliance with G. L. c. 149, § 29C. That statute, in turn, states that "[a]ny provision for or in connection with a contract for construction . . . which requires a subcontractor to indemnify any party for any injury to persons or damage to property not caused by the subcontractor or its employees, agents or subcontractors, shall be void." G. L. c. 149, § 29C. See RCS Group, Inc. v. Lamonica Constr. Co., 75 Mass. App. Ct. 613, 616 (2009).

The subcontract also required that PJ Spillane maintain a commercial general liability insurance policy and include JMA as an additional insured on that policy. At the relevant time, PJ Spillane was covered under a commercial general liability insurance policy issued by Zurich. That policy provided,

> "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result."

JMA was listed on an additional insured endorsement to the policy. The endorsement specified that JMA was insured "only with respect to liability arising out of [PJ Spillane's] ongoing operations performed for [JMA]." The endorsement also explained

that, if the insured and additional insured had entered into a construction contract, "the insurance afforded to [JMA] only applies to the extent permitted by law."

    b.  <u>The underlying action</u>.  On August 8, 2018, a foreman employed by PJ Spillane was walking to the roof of a building on the job site when he stepped over the counterweights of the scaffolding and into a hole that was supposed to be covered by a metal grate.  The foreman fell three feet and injured his knee.  As a result of the accident, on May 15, 2020, the foreman brought a negligence action against JMA and Triple G Scaffold Services Corp. (Triple G), the subcontractor hired by JMA to perform scaffolding work at the job site (underlying action).  The foreman alleged that JMA committed a breach of its duty to provide a safe job site by "leaving an unguarded hole that acted as a trap door."  The foreman further alleged that "someone from Triple G had removed that metal grate leaving the hole exposed and unguarded."

    On June 2, 2020, JMA demanded that PJ Spillane agree to indemnify JMA in connection with the foreman's claim, pay for JMA's defense, and satisfy any judgment entered against JMA in the underlying action.  JMA also demanded that PJ Spillane satisfy its insurance obligations under the subcontract, including taking all actions necessary to ensure that its insurance carrier defended and indemnified JMA.

On July 24, 2020, Zurich accepted JMA's tender, agreed to defend and indemnify JMA without a reservation of rights, and assigned counsel to assume JMA's defense. Five days later, JMA requested that Zurich reimburse JMA for all defense costs incurred prior to Zurich's acceptance of coverage. To that end, JMA forwarded copies of the legal bills from its retained counsel to Zurich, but Zurich did not reimburse or pay JMA for any of its costs in the underlying action at that time.

On August 11, 2020, Triple G demanded that JMA defend and indemnify Triple G for any losses incurred in the underlying action under the terms of their agreement, and JMA, in turn, requested that Zurich defend and indemnify JMA against Triple G's claim as part of Zurich's acceptance of coverage. Zurich responded by rescinding its acceptance of coverage, denying JMA's tender for defense and indemnity in connection with Triple G's claim, and tendering a defense in connection with the foreman's claim against JMA in the underlying action only with a full reservation of "any and all rights."

Thereafter, on October 15, 2020, Triple G rescinded its demand to JMA for a contractual defense and indemnity. After JMA notified Zurich of Triple G's rescission, Zurich refused JMA's request that Zurich withdraw its reservation of rights with respect to JMA's tender. Instead, by letter dated December 3, 2020, Zurich renewed its reservation of rights, including

expressly reserving "the right to recoup any amounts paid as defense expenses that can be attributable to liability that is not potentially covered, if allowed by law."  Zurich explained, "At this time, it is questionable whether the claims being asserted are covered under the terms of the policy.  We are agreeing to defend JMA (only) in this suit because there is a potential for coverage."  With respect to coverage, Zurich stated PJ Spillane "may be found to possess no liability" (and, therefore, in Zurich's view, the claim would not be covered) if it is proven that a Triple G employee removed the metal grate, leaving the hole in which the foreman fell open and unguarded.

JMA responded by letter on December 18, 2020, explaining that counsel retained by JMA would continue to defend it in the underlying action and JMA would continue to submit its bills for defense costs to Zurich for payment.  JMA further asserted its position that "Zurich has breached its contractual obligations under the Zurich Policy by refusing to accept JMA's tender for defense and indemnity without reservation."  JMA received no response to the December 18 letter.

c.  The present action.  On February 24, 2021, nearly seven months after JMA first requested reimbursement for defense costs, JMA initiated this action against Zurich for breach of contract, declaratory relief concerning Zurich's obligations under the terms of the policy and subcontract, and violations of

G. L. cc. 93A and 176D.  In the complaint, JMA alleged that Zurich had paid nothing for its defense in the underlying action as of the date of the filing, and that JMA was entitled to a defense and indemnification without a reservation of rights.

On May 11, 2021, Zurich moved to dismiss the complaint pursuant to Mass. R. Civ. P. 12 (b) (6), and JMA cross-moved for judgment on the pleadings pursuant to Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974).  On October 18, 2021, Zurich finally paid JMA's defense counsel's July 2020 invoice, "exclud[ing] any fees related to the coverage litigation and/or the coverage dispute between JMA and Zurich."  The hearing on the motions was held November 8, 2021.  The next day, Zurich paid JMA's defense counsel's invoices from August 2020 through July 2021, again "exclud[ing] any fees related to the coverage litigation and/or dispute between JMA and Zurich."

After the parties' submission of supplemental pleadings, including an affidavit detailing the October and November 2021 payments, a judge of the Superior Court allowed the motion to dismiss in its entirety.  Relying on those payments and Zurich's acknowledgment that it had a duty to defend subject to a reservation of rights, the judge reasoned that Zurich was not in breach of the policy and no actual controversy existed regarding the duty to defend.  The judge further acknowledged that it is an open issue whether Massachusetts law permits an insurer to

recoup defense costs, but she concluded that question need not be resolved here because Zurich's reservation of rights was limited to what the law allows and Zurich had made no attempt to recoup costs at that time. The judge also concluded that any request concerning Zurich's duty to indemnify was premature because no determination has been made in the underlying action concerning JMA's liability. For the same reasons, the judge explained that the claim for violation of G. L. cc. 93A and 176D must be dismissed. This appeal followed.

2. Standard of review. We review the allowance of a motion to dismiss de novo, "accept[ing] as true the allegations in the complaint and draw[ing] every reasonable inference in favor of the plaintiff." Dartmouth v. Greater New Bedford Regional Vocational Tech. High Sch. Dist., 461 Mass. 366, 374 (2012). In evaluating the dismissal of a claim for declaratory relief, we first determine whether the claim is "properly brought," meaning that an actual controversy exists, the plaintiff has standing to sue, and all necessary parties have been joined. Buffalo-Water 1, LLC v. Fidelity Real Estate Co., LLC, 481 Mass. 13, 18 (2018).[2] If a claim is "properly brought,"

_____

[2] "Where the relief sought through a declaratory judgment claim involves administrative action, we further require the plaintiff to show that all available administrative remedies have been exhausted." Buffalo-Water 1, LLC, 481 Mass. at 18 n.8.

we then determine whether the facts alleged in the complaint state a claim for declaratory relief.  Id.

3.  Breach of contract.  a.  Breach.  It is well settled that the duty to defend is broader than the duty to indemnify. See Boston Symphony Orch., Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 10 (1989).  An insurer's duty to defend is triggered when the allegations in a third party's complaint against an insured are "reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms."  Preferred Mut. Ins. Co. v. Vermont Mut. Ins. Co., 87 Mass. App. Ct. 510, 513 (2015), quoting Billings v. Commerce Ins. Co., 458 Mass. 194, 200 (2010).  "The underlying complaint 'need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage.  There is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage.'"  Holyoke Mut. Ins. Co. in Salem v. Vibram USA, Inc., 480 Mass. 480, 484 (2018), quoting Billings, supra at 200-201.

In the scenario, as here, where the "insurer seeks to defend its insured under a reservation of rights, and the insured is unwilling that the insurer do so, the insured may require the insurer either to relinquish its reservation of rights or relinquish its defense of the insured and reimburse

the insured for its defense costs."  Herbert A. Sullivan, Inc.
v. Utica Mut. Ins. Co., 439 Mass. 387, 406-407 (2003)
(Sullivan).  A breach of the duty to defend constitutes a breach
of the insurance contract.  See Metropolitan Prop. & Cas. Ins.
Co. v. Morrison, 460 Mass. 352, 359 (2011) (Morrison).

The parties do not dispute that the negligence claim
against JMA as alleged in the foreman's complaint is potentially
covered by the policy and, thus, that Zurich has a duty to
defend JMA at this time.  Where Zurich insisted on proceeding
subject to a reservation of rights, JMA was entitled to maintain
control of its defense and to seek payment of its legal bills
from Zurich.  At that point, Zurich was required to reimburse
JMA for reasonable attorney's fees incurred by JMA's chosen
counsel.  See, e.g., Sullivan, 439 Mass. at 406-407; Rass Corp.
v. Travelers Cos., 90 Mass. App. Ct. 643, 657 n.16 (2016).[3]  JMA

_____

[3] Of course, if Zurich believed -- or even suspected -- that
it did not have a duty to defend, it was free to initiate a
declaratory judgment action to resolve the question.

> "Where there is uncertainty as to whether an insurer owes a
> duty to defend, the insurer has the option of providing the
> insured with a defense under a reservation of rights,
> filing a declaratory judgment action to resolve whether it
> owes a duty to defend or to indemnify, moving to stay the
> underlying action until a declaratory judgment enters, and
> withdrawing from the defense if it obtains a declaration
> that it owes no duty to the insured."

Commerce Ins. Co. v. Szafarowicz, 483 Mass. 247, 257 (2019),
quoting Morrison, 460 Mass. at 358-359.

alleged that Zurich failed to do so, thus prompting JMA's initiation of this action.  These allegations adequately set out a breach of contract claim premised on Zurich's nonpayment of JMA's defense costs.  See Sarnafil, Inc. v. Peerless Ins. Co., 418 Mass. 295, 305 (1994) ("An insurer which reserves its rights and takes no action in defense of its insured, when it knew, or should have known, of a covered claim, . . . despite repeated claims of coverage and requests for a defense from an insured facing demands for immediate action, could be found to have committed a breach of the duty to its insured").

b.  Damages.  Even if the claim was adequately pleaded, Zurich contends that dismissal nonetheless was appropriate where Zurich has now reimbursed JMA for its defense costs in the underlying action and, Zurich argues, JMA is not entitled to recover costs for the prosecution of this action as a matter of law.  Putting aside the fact that payments after the filing of the complaint are not a proper basis for a dismissal for failure to state a claim,[4] Zurich's latter argument is premised on its

---

[4] On a motion under Mass. R. Civ. P. 12 (b) (6), the judge was limited to the facts alleged in JMA's complaint, that is, that Zurich paid nothing for JMA's defense.  See, e.g., Dartmouth, 461 Mass. at 374.  The motion judge's consideration of Zurich's affidavit, while expressly declining to convert the motion to dismiss to one for summary judgment, was error.  The information in the affidavit about Zurich's payments to JMA postdates the filing of this action and, therefore, was not (and could not have been) relied on by JMA in the framing of its complaint.  Contrast Marram v. Kobrick Offshore Fund, Ltd., 442

theory that it is responsible only for the defense costs in the underlying action and not for JMA's litigation costs in compelling Zurich to pay those defense costs.  JMA, by contrast, argues that it is entitled to recover its costs to enforce its right to a defense where the insurer fails to pay for the defense until forced to do so by litigation.

Recognizing an insured's right to recover costs associated with the prosecution of a coverage action in these circumstances is a natural extension of the Supreme Judicial Court's decision in Preferred Mut. Ins. Co. v. Gamache, 426 Mass. 93 (1997) (Gamache), and its progeny.  In Gamache, the Supreme Judicial Court recognized an exception to the so-called "American rule," which otherwise prohibits successful litigants from recovering attorney's fees and expenses.  Id. at 95.  The court explained that "an insured . . . is entitled to the reasonable attorney's fees and expenses incurred in successfully establishing the insurer's duty to defend under the policy."  Id. at 98.  The court later recognized that the rule in Gamache extends to coverage actions regarding the duty to defend notwithstanding

Mass. 43, 45 n.4 (2004) (court may consider documents attached to motion to dismiss without converting to summary judgment "[w]here . . . the plaintiff had notice of these documents and relied on them in framing the complaint").  The error, however, is of little consequence here where we conclude that, if JMA prevails, remedies beyond reimbursement of defense costs in the underlying action are available.

the type of comprehensive liability policy at issue, see

Rubenstein v. Royal Ins. Co. of Am., 429 Mass. 355, 357 (1999);

whether the insurer's refusal to defend was in good or bad

faith, see id. at 359-360; and whether insurer or insured

initiates the coverage action, see id. at 358.[5]

Gamache addressed a slightly different scenario than here,

because there the parties disputed the existence of the

insurer's duty to defend against a claim by a third party.  See

Gamache, 426 Mass. at 95-96.  Nonetheless, the reasoning in the

Gamache line of cases applies with greater force to the facts

alleged here -- namely, where the insurer concedes the existence

of a duty to defend but the insured is forced to bring an action

to compel the insurer to actually satisfy its duty.  The breach

of the duty to defend is worse where the insurer acknowledges

that it has the duty to defend but then refuses to comply with

that duty than where the insurer merely has a good faith

disagreement about its duty to defend.  In so holding, we

recognize the broad nature of the insurer's duty to defend and

the heavy burden on the insured in the event of breach.  See

Gamache, supra at 96.  In light of that dynamic, "the insurer

---

[5] The court also held that the Gamache rule applies even if
the insurer provisionally provides a defense while litigating
whether it has a duty to defend.  See Hanover Ins. Co. v.
Golden, 436 Mass. 584, 587-588 (2002).

should not enjoy the usual freedom to litigate without concern about the possibility of having to pay the [insured's] attorneys' fees." Id., quoting Gibson v. Farm Family Mut. Ins. Co., 673 A.2d 1350, 1354 (Me. 1996). See Wilkinson v. Citation Ins. Co., 447 Mass. 663, 671 (2006) ("By the time the insurer's duty to defend has been established through litigation, the insured may already have been denied much of the benefit and protection of that defense, depriving the insured of the benefit of the bargain and requiring an alternative compensatory measure like attorney's fees"). Indeed, where an insurer wrongfully refuses to defend,[6] the insured is deprived of the benefit of the contractual bargain for which it paid, namely, to shift the responsibility to defend a potentially covered claim to the insurer. See Rubenstein, 429 Mass. at 358. Even if the insured is ultimately compensated for its defense in the underlying action, "it would remain permanently uncompensated for the costs associated with the . . . action it was forced to initiate because of the insurer's violation of its duty to defend." Id. at 358-359. The same risk is presented here.

_____

[6] In a situation where the insurer concedes it has a duty to defend, it ordinarily has not refused to provide that defense until a reasonable time passes without its paying invoices presented to it. We need not explore what that reasonable time is here, where it appears uncontested -- at least for motion to dismiss purposes -- that there was no payment for approximately fifteen months after the first invoice was submitted to Zurich.

For the reasons described above, JMA adequately pleaded a breach of contract claim against Zurich. If JMA succeeds in proving that Zurich violated the duty to defend by failing to fund JMA's defense, JMA may recover attorney's fees and expenses associated with prosecution of this action to compel Zurich's compliance with its duty.

4. <u>Violation of G. L. cc. 93A and 176D</u>. JMA also has adequately stated a claim of a violation of G. L. cc. 93A and 176D based on Zurich's nonpayment of JMA's defense costs. General Laws c. 93A, § 2 (<u>a</u>), renders "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . unlawful." In the insurance context, G. L. c. 176D, § 3 (9) (<u>g</u>), defines an unfair claim settlement practice to include "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds." Where, as here, the injured party is engaged in the conduct of trade or commerce, "a violation of c. 176D, § 3 (9), provides evidence of an unfair or deceptive practice in violation of c. 93A, but is not conclusive." <u>Rass Corp</u>., 90 Mass. App. Ct. at 656. See G. L. c. 93A, § 11.

We have previously acknowledged that a claim against an insurer may lie under G. L. c. 93A, § 11, where the insurer

"unnecessarily and unreasonably delay[s] payment [of the insured's attorney's fees expended in defense of underlying action] for fourteen months," despite acknowledging that it had a duty to reimburse reasonable expenses.  Northern Sec. Ins. Co. v. R.H. Realty Trust, 78 Mass. App. Ct. 691, 696 (2011). See Rass Corp., 90 Mass. App. Ct. at 657 ("by surrendering control of the defense to the insured under a reservation of rights, yet at the same time refusing to pay [insured's counsel's] hourly rate, which was reasonable, [insurer] unfairly compelled [insured] to seek the unpaid fees through litigation").  At the motion to dismiss stage, the allegations that Zurich, without adequate excuse, had not paid defense costs for seven months after receiving invoices from JMA is sufficient to support a claim for a violation of G. L. cc. 93 and 176D.

5.  Declaratory judgment.  a.  Duty to defend.  i.  Actual controversy.  JMA argues that the motion judge erred in dismissing its request for declaratory relief concerning Zurich's duty to defend on the basis that no actual controversy has arisen.  Specifically, JMA maintains that Zurich's baseless reservation of the right to recoup defense costs renders Zurich's agreement to defend nothing more than a sham.[7]

_____

[7] We construe the complaint broadly to challenge Zurich's right to recoupment where JMA specifically sought a declaration that "Zurich has the obligation . . . to defend and indemnify JMA for the full amount of JMA's costs and expenses, including

The purpose of G. L. c. 231A "is to remove, and to afford relief from, uncertainty and insecurity with respect to rights, duties, status and other legal relations, and it is to be liberally construed and administered."  G. L. c. 231A, § 9. Declaratory relief proceedings "are concerned with the resolution of real, not hypothetical, controversies; the declaration issued is intended to have an immediate impact on the rights of the parties."  Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc. v. Commissioner of Ins., 373 Mass. 290, 292 (1977).

> "An actual controversy exists where there is:  'a real dispute caused by the assertion by one party of a legal relation, status or right in which he has a definite interest, and the denial of such assertion by another party also having a definite interest in the subject matter, where the circumstances attending the dispute plainly indicate that unless the matter is adjusted such antagonistic claims will almost immediately and inevitably lead to litigation.'"

Gay & Lesbian Advocates & Defenders v. Attorney Gen., 436 Mass. 132, 134-135 (2002), quoting Bunker Hill Distrib., Inc. v. District Attorney for the Suffolk Dist., 376 Mass. 142, 144 (1978).

As discussed further infra, the parties' dispute implicates a question of law that is unsettled in Massachusetts -- if, and

---

attorneys' fees, for the defense of [the underlying action] and the prosecution of this action."

in what circumstances, an insurer may seek to recoup defense costs provided to an insured.  Given the legal uncertainty regarding the enforceability of Zurich's reservation of a right to recoup, JMA has demonstrated a real dispute concerning the parties' rights in which they have a definite interest.[8]

Zurich urges us that an actual controversy may arise only if, at some point in the future, it determines that claim is not covered and then seeks recoupment.  We disagree where Zurich has a present duty to defend in ongoing litigation.  JMA seeks a declaration concerning the scope of that duty and asserts that Zurich's reservation of the right to recoup "has an immediate impact on JMA's defense strategy (and ability to defend itself) in the [u]nderlying [a]ction."  This is so even if Zurich never actually seeks recoupment; as things stand, JMA must weigh the vigorousness of its defense against the possibility that it ultimately will have to reimburse Zurich for the entire cost of that defense.  See Boston v. Keene Corp., 406 Mass. 301, 304 (1989) ("party seeking declaratory judgment need not demonstrate an actual impairment of rights").  See also G. L. c. 231A, § 1

---

[8] We are not persuaded by Zurich's argument that no actual controversy exists because it limited its right to recoup to "any amounts paid as defense expenses that can be attributable to liability that is not potentially covered, if allowed by law" (emphasis added).  This disclaimer merely highlights the uncertainty of the law on this point.

(party may seek declaratory relief "either before or after a breach or violation thereof has occurred in any case in which an actual controversy has arisen"). An actual controversy has arisen with respect to whether Zurich has a right to recoup defense costs. Cf. Improved Mach., Inc. v. Merchants Mut. Ins. Co., 349 Mass. 461, 463 (1965) (actual controversy existed in dispute between two insurers over duty to defend insured in third party action where liability of insured not yet determined); S. Plitt, D. Maldonado, J.D. Rogers, & J.R. Plitt, 16A Couch on Insurance 3d § 227:29 (rev. ed. 2021) ("whether an insurer has a duty to defend a suit against its insured is generally considered a controversy ripe for declaratory relief, even when the issue of the insurer's actual liability in the underlying suit may not be considered until after a resolution of that suit").[9]

ii. Recoupment. Given our conclusion that JMA is entitled to declaratory relief concerning Zurich's purported right to recoup, we provide some further guidance for the parties on remand. As noted above, whether an insurer may seek to recoup costs of a defense undertaken pursuant to a unilateral

_____

[9] The remaining requirements of a "properly brought" claim for declaratory relief -- that is, JMA's legal standing to sue, and the joinder of all necessary parties -- are easily met here, and the parties do not argue otherwise. Buffalo-Water 1, LLC, 481 Mass. at 18.

reservation of rights is an open issue under Massachusetts law. See Holyoke Mut. Ins. Co. in Salem, 480 Mass. at 481 n.4; Metropolitan Life Ins. Co. v. Cotter, 464 Mass. 623, 642 n.21 (2013) (Cotter).  Other jurisdictions are closely split on the issue.  See Cotter, supra.

Several jurisdictions espouse the view that recoupment is not permissible, at least in the absence of an express provision in the policy or a subsequent agreement between the parties.[10] Indeed, our own Supreme Judicial Court acknowledged in dicta the line of cases that decline to allow recoupment "[b]ased on the theory that insurers are in the business of analyzing and

---

[10] For case law declining to recognize a right to recoupment, see, e.g., Attorneys Liab. Protection Soc'y, Inc. v. Ingaldson Fitzgerald, P.C., 370 P.3d 1101, 1112 (Alaska 2016), abrogated on other grounds by Buntin v. Schlumberger Tech. Corp., 487 P.3d 595, 598 n.4 (Alaska 2021); Medical Liab. Mut. Ins. Co. v. Alan Curtis Enters. Inc., 373 Ark. 525, 527-530 (2008); General Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co., 215 Ill. 2d 146, 162-163, 166 (2005); American & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 606 Pa. 584, 613-614 (2010); United States Fid. v. United States Sports Specialty, 270 P.3d 464, 471 (Utah 2012); National Sur. Corp. v. Immunex Corp., 176 Wash. 2d 872, 887-888 (2013); Shoshone First Bank v. Pacific Employers Ins. Co., 2 P.3d 510, 513-514 (Wyo. 2000).  See also Westchester Fire Ins. Co. v. Wallerich, 563 F.3d 707, 719 (8th Cir. 2009) (applying Minnesota law); Perdue Farms, Inc. v. Travelers Cas. & Sur. Co. of Am., 448 F.3d 252, 258-259 (4th Cir. 2006) (applying Maryland law); Liberty Mut. Ins. Co. v. FAG Bearings Corp., 153 F.3d 919, 924 (8th Cir. 1998) (applying Missouri law).  Cf. Texas Ass'n of Counties County Gov't Risk Mgt. Pool v. Matagorda County, 52 S.W.3d 128, 131, 135-136 (Tex. 2000) (declining to permit reimbursement of settlement costs under reservation of rights).

allocating risk, and thus in a better position to do so."
Cotter, 464 Mass. at 642 n.21.  This view, while dubbed the
"minority" approach, has gained traction in recent years and was
adopted as the default rule by the authors of the Restatement of
the Law of Liability Insurance in 2019.  Restatement of the Law
of Liability Insurance § 21 comment a (2019).[11]  See American
Family Ins. Co. v. Almassud, 522 F. Supp. 3d 1263, 1269 (N.D.
Ga. 2021) (applying Georgia law; adopting no-recoupment default
rule); Hayes v. Wisconsin & S. R.R., LLC, 514 F. Supp. 3d 1055,
1062-1064 (E.D. Wis. 2021) (applying Wisconsin law; same).  But
see Nautilus Ins. Co. v. Access Med., LLC, 137 Nev. 96, 102-103
(2021) (reimbursement under express reservation of rights
permitted if determined insurer had no contractual duty to
defend).

---

[11] The position of the Restatement of the Law of Liability
Insurance contrasts with that in the Restatement (Third) of
Restitution & Unjust Enrichment § 35 (2011).  The latter
suggests recoupment may be appropriate in certain circumstances
and provides specific examples of when an insurer may recover
for unjust enrichment.  See Restatement (Third) of Restitution &
Unjust Enrichment § 35 comment c, at 578 ("If the insurer --
having given adequate notice that it is proceeding under
reservation of rights -- eventually prevails in the underlying
coverage dispute, it may recover that part of its outlay that
exceeds its policy obligation by a claim in restitution within
the rule of this section").  The Restatement of the Law of
Liability Insurance expressly rejects that position.  See
Restatement of the Law of Liability Insurance § 21 comment b.

In jurisdictions that recognize a right to recoupment, the issue most often arises in legal actions where none of the claims are even potentially covered by the policy or in so-called "mixed" actions, where some of the claims are potentially covered and some are not.[12]  See Restatement of the Law of Liability Insurance § 21 comments a, e.  In support of this view, one court reasoned that the insurer's right to recover defense costs for claims not even potentially covered (and, thus, for which there was no duty to defend) "is implied in law as quasi-contractual, whether or not [the insurer] has one that is implied in fact in the policy as contractual."  Buss v. Superior Court, 16 Cal. 4th 35, 51 (1997).

---

[12] Compare Buss v. Superior Court, 16 Cal. 4th 35, 52-53 (1997) (mixed action), with Scottsdale Ins. Co. v. MV Transp., 36 Cal. 4th 643, 655, 662 (2005) (no claim potentially covered). For other cases recognizing a right to recoupment, see Jim Black & Assocs., Inc. v. Transcontinental Ins. Co., 932 So. 2d 516, 518 (Fla. Dist. Ct. App. 2006); Colony Ins. Co. v. G & E Tires & Serv., Inc., 777 So. 2d 1034, 1038-1039 (Fla. Dist. Ct. App. 2000); Travelers Cas. & Sur. Co. v. Ribi Immunochem Research, Inc., 326 Mont. 174, 188-190 (2005); Nautilus Ins. Co., 137 Nev. at 102-103; SL Indus., Inc. v. American Motorists Ins. Co., 128 N.J. 188, 215-216 (1992).  See also Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co., 598 F.3d 257, 268 (6th Cir. 2010) (applying Kentucky law); United Nat'l Ins. Co. v. SST Fitness Corp., 309 F.3d 914, 921 (6th Cir. 2002) (applying Ohio law).  Cf. Security Ins. Co. of Hartford v. Lumbermens Mut. Cas. Co., 264 Conn. 688, 717-718 (2003) (recoupment for periods of self-insurance).  In mixed actions, Massachusetts has adopted the "in for one, in for all" rule that obligates an insurer to defend the insured on all counts, including those not covered. Mount Vernon Fire Ins. Co. v. Visionaid, Inc., 477 Mass. 343, 351 (2017).

Where a right to recoup is recognized, the Restatement of the Law of Liability Insurance distinguishes circumstances in which the insurer is defending under a reservation of rights based on a factual uncertainty related to a ground to contest coverage, as opposed to a legal uncertainty regarding a duty to defend. See Restatement of the Law of Liability Insurance § 21 comment a. Where there is factual uncertainty that may place a claim outside the policy's coverage, "courts generally agree the insurer has a contractual duty to defend until that duty is terminated" through, for instance, a declaration of rights, or settlement, dismissal, or adjudication of the underlying claims. Id. Cf. Buss, 16 Cal. 4th at 49 ("As to the claims that are at least potentially covered, the insurer may not seek reimbursement for defense costs. Apparently, none of the decisional law considering such claims in and of themselves suggests otherwise"). That distinction makes sense where, as in Massachusetts, "[t]he obligation of an insurer to defend is not, and cannot be, determined by reference to the facts proven at trial." Boston Symphony Orch., Inc., 406 Mass. at 10.

For claims where a legal uncertainty exists whether the insurer has a duty to defend an action, some insurers ultimately prevailing on that issue have sought recoupment. See Restatement of the Law of Liability Insurance § 21 comment a. Others have "sought recoupment for the portions of the defense

costs attributed to noncovered claims incurred in defending legal actions that they did have a duty to defend" (emphasis added). Id. Whether Massachusetts would recognize such a right to recoup in those circumstances is questionable given the Supreme Judicial Court's observation that "[a] declaratory judgment of no coverage, either by summary judgment or after trial, does not retroactively relieve the primary insurer of the duty to defend; it only relieves the insurer of the obligation to continue to defend after the declaration." Morrison, 460 Mass. at 359, quoting 14 G. Couch, Insurance § 200:48, at 200-65 to 200-66 (3d ed. 2005).

At oral argument, Zurich maintained that it could seek recoupment if (1) the underlying litigation revealed that the foreman's claim was not ultimately covered, but cf. Morrison, 460 Mass. at 359; and (2) JMA forced Zurich to defend through some unfair behavior that had a "flavor of extortion." Berkley Nat'l Ins. Co. v. Granite Telecomm. LLC,    F. Supp. 3d   ,   , U.S. Dist. Ct., No. 21-10626, at    n.3 (D. Mass. July 29, 2022). In the case relied on by Zurich to support the proposition, a judge of the United States District Court for the District of Massachusetts reasoned that it would be manifestly unjust to allow an insured to retain defense costs when the insurer had no obligation to defend because the underlying claims were not potentially covered, and the insurer was

effectively forced to defend when the insured threatened to sue. Id. at   -    & n.3.  Of course, even if Massachusetts would recognize this basis for recoupment (a point which we do not reach at this juncture), that does not necessarily mean that an insurer may reserve a right to recoup on this ground without identifying some factual basis to support that assertion.[13]

b.  Duty to indemnify.  JMA also seeks declarations concerning the scope of Zurich's duty to indemnify under the policy and the subcontract should JMA be held liable in the underlying action.  We agree with the motion judge that an order regarding indemnification is premature.  "[A]n insurer's obligation to defend its insured is measured by the allegations of the underlying complaint[, but] the obligation to indemnify does not ineluctably follow from the duty to defend."  Newell-Blais Post No. 443, Veterans of Foreign Wars of the U.S., Inc. v. Shelby Mut. Ins. Co., 396 Mass. 633, 638 (1986) (Newell-Blais).  Here, the indemnification issue may turn on facts proven in the underlying action.  For instance, JMA could be found not liable after trial or PJ Spillane's duty to indemnify could be limited by operation of G. L. c. 149, § 29C, if the

_____

[13] At oral argument, Zurich could not identify any facts to support an inference that JMA's conduct had the "flavor of extortion."  We are mindful, however, that this matter was resolved on a motion to dismiss and resolution of that issue implicates factual questions.

injury was "not caused by the subcontractor or its employees, agents or subcontractors."  As such, "[t]he issue of indemnification must await the completion of trial."  Newell-Blais, supra (modifying judgment to delete portion imposing obligation to indemnify if judgment entered against insured in wrongful death action).  Cf. Atain Specialty Ins. Co. v. Boston Rickshaw LLC, 387 F. Supp. 3d 157, 160 (D. Mass. 2019) ("courts frequently hold that an insurer's duty to indemnify does not become ripe for adjudication until the underlying lawsuit for liability is resolved").  The requests for declaratory relief on the duty to indemnify under the policy and the subcontract were properly dismissed as premature.

6.  Conclusion.  So much of the judgment as dismissed the claims for breach of contract, violation of G. L. cc. 93A and 176D, and declaratory judgment on the duty to defend is vacated, and the matter is remanded for further proceedings consistent with this opinion.  The judgment is otherwise affirmed.

So ordered.